955 F.2d 134
 Bankr. L. Rep. P 74,443
In re Philip N. BURGESS, Jr., Debtor.
COMMERCE BANK & TRUST COMPANY, Appellant,
v.
Philip N. BURGESS, Jr., Appellee.
In re Philip N. BURGESS, Sr., Debtor.
COMMERCE BANK & TRUST COMPANY, Appellant,
v.
Philip N. BURGESS, Sr., Appellee.
 Nos. 91-1606, 91-1607.
 United States Court of Appeals,
First Circuit.
 Heard Nov. 6, 1991.
Decided Jan. 31, 1992.
 
 Henry J. Boroff with whom James F. Coffey and Boroff & Associates, Boston, Mass., were on brief, for appellant.
 Donald R. Coblentz, Worcester, Mass., for appellee Philip N. Burgess, Jr.
 Carl D. Aframe, Worcester, Mass., for appellee Philip N. Burgess, Sr.
 Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.
 CYR, Circuit Judge.
 
 
 1
 Commerce Bank and Trust Company ("Bank") appeals a district court judgment affirming the dismissal by the bankruptcy court of adversary proceedings opposing appellees' right to a discharge in bankruptcy and, alternatively, challenging the dischargeability of particular debts. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 The Bank held six notes on which appellees Philip Burgess, Sr. and Philip Burgess, Jr., father and son, were either makers or personal guarantors. Burgess Electric and Mechanical Contractors, Inc. ("BEMC"), whose president was Philip Burgess, Jr., was the principal obligor on three notes, totalling $575,000.[1] It is stipulated that Burgess Sr., Burgess Jr. and BEMC, jointly and severally, owed the Bank a total balance of $650,000, inclusive of interest and costs.
 
 
 4
 On or about November 15, 1988, the Bank and other creditors filed involuntary chapter 7 petitions against the Burgesses and BEMC. See 11 U.S.C. § 303(a). Burgess Sr. consented to an order for chapter 7 relief in March 1989, and orders for involuntary chapter 7 relief were entered against Burgess Jr. and BEMC in April, 1989. In February 1990, the Bank initiated adversary proceedings opposing the allowance of discharges in bankruptcy to the Burgesses and, in the alternative, challenging the dischargeability of particular debts. At trial, the bankruptcy court directed appellees' counsel to submit a motion to dismiss, see Fed.R.Bankr.P. 7041; Fed.R.Civ.P. 41(b), after the presentation of the Bank's case. The Bank appealed the ensuing dismissal order. The district court affirmed on the ground that the Bank had "fallen far short" of demonstrating that the bankruptcy court's findings were clearly erroneous. The Bank appealed. After a careful examination of the entire record, we affirm the district court judgment.
 
 II
 DISCUSSION
 
 5
 The burden of persuasion rests with the party either opposing a discharge in bankruptcy under Bankruptcy Code § 727, see Fed.R.Bankr.P. 4005; In re Tully, 818 F.2d 106, 109 (1st Cir.1987), or contesting the dischargeability of a particular debt under Bankruptcy Code § 523, see, e.g., In re Black, 787 F.2d 503, 505 (10th Cir.1986); In re Hunter, 780 F.2d 1577, 1579 (11th Cir.1986). The Bank's burden of persuasion is especially onerous in the present case, as the bankruptcy court's findings of fact alone are challenged.[2] Thus, we review only for clear error, with "due regard ... to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed.R.Bankr.P. 8013; see also In re Tully, 818 F.2d at 109. Moreover, the statutory requirements for a discharge in bankruptcy are "construed liberally in favor of the debtor" and " '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' " Id., (quoting Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir.1934)).
 
 Discharge in Bankruptcy
 
 6
 The Bank claims that the bankruptcy court committed reversible error by granting Philip Burgess, Sr. a discharge in bankruptcy notwithstanding numerous allegedly false statements in violation of Bankruptcy Code § 727(a)(4)(A). See 11 U.S.C. § 727(a)(4)(A).[3] "Under § 727(a)(4)(A), [a] debtor can be refused [a] discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact [in connection with the case]." In re Tully, 818 F.2d at 110. "Because a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate." Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir.1987). The Bank points to no "real and substantial" evidence that any misstatement by Burgess Sr. was made with fraudulent intent. Moreover, in certain instances the Bank failed to produce evidence that the alleged misstatements were material.[4] We discern no clear error in the finding that Burgess Sr. "made no false oath within the meaning of 11 U.S.C. § 727(a)(4)(A)."The Burgesses concede that proceeds from BEMC's accounts receivable were transferred to the Burgess Sr. checking account within one year prior to the filing of these involuntary chapter 7 petitions. The Bank contends, therefore, that both Burgesses should have been denied a discharge in bankruptcy by virtue of Bankruptcy Code §§ 727(a)(2)(A) and 727(a)(7), which require the Bank to show that:
 
 
 7
 (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed ... (A) property of the debtor, within one year before the date of the filing of the petition; or ... (7) [the debtor does the same] in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.
 
 
 8
 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(7). The Burgesses testified that these transfers were made for the purpose of enabling BEMC to meet its payroll due to the unwillingness of any bank to deal with the corporate entity. The Bank's exclusive reliance on its conclusory assertion that the Burgesses' testimony should not have been believed falls far short of a showing of clear error in the bankruptcy court's finding that these transfers were not made with "intent to hinder, delay or defraud."[5] See, e.g., Anderson v. Beatrice Foods Co., 900 F.2d 388, 392 (1st Cir.1990) (" 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' ") (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).
 
 
 9
 The Bank further contends that Burgess Jr. should have been denied a discharge in bankruptcy pursuant to Bankruptcy Code § 727(a)(6)(A), for failure to file Schedules of Assets and Liabilities and Statements of Affairs on or before June 12, 1989, as ordered by the bankruptcy court. Section 727(a)(6)(A) provides for the denial of a discharge in bankruptcy when "the debtor has refused, in the case--(A) to obey any lawful order of the court...." (emphasis added).
 
 
 10
 The present record makes clear that the required filings, though late, were made on or about August 2, 1989. Although we do not minimize the importance of prompt compliance with all bankruptcy court orders, we do recognize that the bankruptcy judge who issues the order, or oversees its compliance, normally is in the best position to evaluate whether a delay in compliance warrants denial of a discharge in bankruptcy. See In re Jones, 490 F.2d 452, 456 (5th Cir.1974). Since Burgess Jr. belatedly submitted the statements and schedules ordered by the court, and there was no evidence either of harm to creditors or contumacy, see id.; In re Kokoszka, 479 F.2d 990, 997-998 (2d Cir.1973), we are disinclined to second-guess the bankruptcy judge's determination that Burgess Jr. did not refuse to obey the court order.
 
 
 11
 The Bank asserts that Burgess Jr. should have been denied a discharge in bankruptcy for failure to keep and preserve appropriate books and records of BEMC, see 11 U.S.C. § 727(a)(3), or, in the alternative, for failure to turn over BEMC's books and records to the trustee in bankruptcy, see 11 U.S.C. § 727(a)(4)(D).[6] The evidence demonstrates that records and information concerning BEMC's financial condition were kept and preserved, including records of vendors, creditors, payables and receivables. The Bank presented insufficient evidence to sustain its burden of showing that BEMC's records were inadequate. See In re Calisoff, 92 B.R. 346, 356 (Bankr.N.D.Ill.1988) (plaintiff bears burden of proving that debtor did not keep adequate records). Moreover, although the evidence indicates some ill will between Burgess Jr. and the trustee in bankruptcy, the Bank failed to adduce any evidence that Burgess Jr. withheld financial information.
 
 Debts Excepted from Discharge
 
 12
 The Bank argues, alternatively, that certain debts should have been excepted from any discharge in bankruptcy obtained by the Burgesses. See 11 U.S.C. § 523. First, the Bank alleges that the Burgesses obtained extensions of credit from the Bank by means of false financial statements in 1985, 1987 and 1988, and that the debts thereby incurred are nondischargeable. See 11 U.S.C. § 523(a)(2)(B).[7] The Bank asserts in particular that the Burgesses' financial statements omit any mention of various contingent liabilities, falsely claim ownership of a residence and fail to list personal assets. The bankruptcy court found, however, that in extending credit the Bank did not rely on any of the alleged misstatements and, alternatively, that there was no intent to deceive. Although either finding is sufficient to defeat the Bank's claim, the record supports both.
 
 
 13
 First, the Bank produced no evidence sufficient to undermine the finding that the debtors did not have the requisite intent to deceive. Alternatively, the Bank's loan officer testified that he knew of the debtors' contingent liabilities prior to approving these credit extensions. It is clear, moreover, that any failure to list assets did not induce the bank to extend credit. As to the allegation that the debtors claimed assets they did not own, the bankruptcy court made no determination as to whether the claimed "assets" were owned by the Burgesses. Instead, the court supportably found that the loan officer had been "sloppy" in dealing with these loans and, therefore, that the Bank had failed to establish reasonable reliance on the information submitted by the debtors. See, e.g., In re Galligher, 41 B.R. 410, 412-13 (Bankr.E.D.Pa.1984) ("reasonable reliance" does not allow material violation of creditor's own practices and procedures).
 
 
 14
 The Bank alleged that the Burgesses violated Bankruptcy Code § 523(a)(2)(A),[8] by falsely representing that they had not collected any BEMC accounts receivable after their Settlement Agreement with the Bank on June 28, 1988, in which Burgess Jr. and BEMC agreed to remit all proceeds from BEMC accounts receivable to the Bank and to submit monthly reports on the status of all BEMC receivables. The Bank alleged that Burgess Jr. orally informed the Bank that no BEMC receivables had been collected, whereas "substantial" amounts were collected and placed in an account of Burgess Sr. The Bank also alleged that it was induced to exclude Burgess Sr. from the reporting requirements of the Settlement Agreement solely in reliance on his misrepresentation that he was not involved in the collection of BEMC receivables.
 
 
 15
 Under Bankruptcy Code § 523(a)(2)(A), the Bank was required to prove that: (1) the debtor obtained property by means of a knowingly false representation or one made in reckless disregard of its truthfulness; (2) the debtor intended to deceive the creditor; (3) the creditor actually relied on the misrepresentation; and (4) the creditor's reliance was reasonable in the circumstances. See, e.g., In re Jackson, 89 B.R. 308, 312 (Bankr.D.Mass.1988). The Bank failed to allege what "property" the Burgesses obtained as a result of the alleged misrepresentations. Moreover, even if it were to be assumed that either Burgess arguably obtained "property" from the Bank after June 28, 1988, perhaps in the form of the Bank's forbearance of collection efforts against either of them, the record is devoid of evidence that any such forbearance resulted from the Bank's reliance, reasonable or otherwise, either on the Settlement Agreement or on the alleged oral representation that Burgess Sr. was not involved in the collection of BEMC receivables.
 
 
 16
 Finally, the Bank asserts that certain other debts it was owed by the Burgesses are nondischargeable under Bankruptcy Code § 523(a)(4).[9] However, the Bank failed to establish that either Burgess ever acted in a fiduciary capacity within the meaning of section 523(a)(4). See In re Thornton, 544 F.2d 1005, 1007 (9th Cir.1976) (§ 523(a)(4) pertains only to fiduciary relationships under an express trust, not to commercial-debt relationships).
 
 Affirmed; costs to appellees.[10]
 
 
 [1]
 The three other notes, originally totalling $238,000, were secured by real estate mortgages on which the Bank foreclosed leaving a $35,000 deficiency
 
 
 [2]
 The Bank attempts to raise a single issue of law on appeal. It argues that the district court erred in not considering, sua sponte, whether the bankruptcy court, in resolving the dischargeability issues under 11 U.S.C. § 523(a), was governed by a "preponderance of the evidence" standard or by the "clear and convincing evidence" standard. See Grogan v. Garner, --- U.S. ----, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (standard of proof in nondischargeability action under 11 U.S.C. § 523(a) is "preponderance of evidence"). As counsel conceded at oral argument, however, the issue was never raised, either before the bankruptcy court or the district court. Thus, the issue has been waived. See Teamsters v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir.1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.")
 We find no such "extraordinary circumstances" as would warrant relief from waiver in the present case. Although Grogan was not decided by the Supreme Court until January 15, 1991, the Eighth Circuit decision, see In re Garner, 881 F.2d 579 (8th Cir.1989) ("clear and convincing" standard applies), rev'd Grogan v. Garner, 111 S.Ct. 654, was entered on August 9, 1989, more than a year before the bankruptcy court entered its decision in the present case on August 31, 1990. Yet the Bank never raised the standard of proof issue below, even though these adversary proceedings were not commenced in the bankruptcy court until February 14, 1990, and the district court did not decide these appeals until April 26, 1991. Thus, the identical issue the Bank seeks to raise for the first time on appeal before us, and faults the district court for not raising sua sponte, was being litigated at the highest judicial levels while these proceedings were before the bankruptcy court and the district court. We can find no warrant for relief from waiver in these circumstances, see Sandstrom v. Chemlawn Corp., 904 F.2d 83, 87 (1st Cir.1990) ("If counsel ... are excused from doing their homework until the case is on appeal, scarce judicial resources will be squandered. Moreover, such casualness ultimately deprives an appellate tribunal of ... a properly developed record...."), especially since relief in these circumstances necessarily would entail a new trial.
 
 
 [3]
 Section 727(a)(4)(A) provides that the court shall grant the discharge in bankruptcy unless "the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account." 11 U.S.C. § 727(a)(4)(A)
 
 
 [4]
 For example, the Bank alleges that Burgess Sr. falsely represented in the Statement of Financial Affairs, executed April 20, 1989, that he was self -employed, whereas in fact he was employed at that time by C.J. Electric, a sole proprietorship owned by his wife. As the district court noted, however, the record is devoid of evidence that Burgess Sr. worked for C.J. Electric or any other employer at the time in question. The Bank did not demonstrate that Burgess Sr. was not self-employed, nor is it clear how his postpetition employment status would have been material to any issue raised by these adversary proceedings. Similarly, the Bank alleges that Burgess Sr. falsely represented on Schedule B-2(e) that the value of his personal property was $1,000. In an effort to substantiate its contention, the Bank relied entirely on the fact that Burgess Sr., approximately two years prior to bankruptcy, submitted a financial statement in which he valued unidentified "personal property" at $60,000. The Bank's contention compares "apples and oranges." Official Form 6, Schedule B-2(e) (1983), relates exclusively to "Wearing apparel, jewelry, firearms, sports equipment and other personal possessions." Official Form 6, Schedule B (1983), contained more than twenty-one required listings of other types of personal property, from annuities to vehicles. Moreover, the Bank presented no evidence as to the value of the property listed on Schedule B-2(e)
 Additionally, the Bank alleged that Burgess Sr. failed to list two joint bank accounts in his and his wife's name. The Bank introduced no evidence that any funds in these accounts belonged to Burgess Sr. The evidence before the bankruptcy court showed that there were no funds in either account at the time of the filing of the involuntary chapter 7 petition. Although the failure to list a bank account for the fraudulent purpose of concealing voidable prepetition transfers certainly would satisfy the "materiality" requirement under Bankruptcy Code § 727(a)(4)(A), see In re Chalik, 748 F.2d 616, 618 (11th Cir.1984) ("The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property.") (emphasis added), the Bank presented no evidence of any such fraudulent purpose in the present case.
 
 
 [5]
 The Bank asserts that these transfers constituted an unexplained "loss or deficiency of assets" warranting denial of a discharge in bankruptcy pursuant to Bankruptcy Code § 727(a)(5). Since the bankruptcy court supportably credited the Burgesses' testimony that these proceeds were used to meet BEMC payrolls, its ruling that the transfer did not result in a "loss or deficiency of assets to meet the debtor's liabilities" was not clearly erroneous
 
 
 [6]
 Bankruptcy Code § 727(a)(4)(D) states as follows:
 The court shall grant a debtor a discharge, unless--
 [ (a) ] (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
 [ (a) ] (4) the debtor knowingly and fraudulently, in or in connection with the case--
 (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.
 11 U.S.C. § 727(a)(3), (4)(D).
 
 
 [7]
 Bankruptcy Code § 523(a)(2)(B) states as follows:
 (a) A discharge under section 727 ... of this title does not discharge an individual from any debt--
 ....
 (2) for ... money, property, services, or an extension, renewal, or refinance of credit, by--
 ....
 (B) use of a statement in writing--
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 (iv) that the debtor caused to be made or published with intent to deceive.
 11 U.S.C. § 523(a)(2)(B).
 
 
 [8]
 Section 523(a)(2)(A) provides that a debtor shall not be discharged on a debt "for obtaining money, property, services, or an extension, renewal or refinance of credit [to the extent obtained] by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A)
 
 
 [9]
 Bankruptcy Code § 523(a)(4) renders nondischargeable any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4)
 
 
 [10]
 We deny the motion of Philip Burgess, Sr. for double costs under Fed.R.App.P. 39, as well as his request for sanctions under Fed.R.App.P. 38