# United States Court of Appeals
## For the First Circuit

No. 02-2323

IN RE JOAN E. CARP,
Debtor.

_____

RICHARD W. GANNETT,
Plaintiff, Appellant,

v.

JOAN E. CARP,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]
[Hon. Joan N. Feeney, U.S. Bankruptcy Judge]

Before

Selya, Circuit Judge,
Stapleton* and Baldock,** Senior Circuit Judges.

Stephanie L. Moon, with whom Richard W. Gannett and Gannett & Associates were on brief, for appellant.
Richard S. Hackel for appellee.

August 18, 2003

_____
*Of the Third Circuit, sitting by designation.
**Of the Tenth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. This appeal arises out of a creditor's quest to block a debtor's discharge in bankruptcy. The bankruptcy court declined to default or sanction the debtor for claiming her Fifth Amendment privilege against self-incrimination, determined that she had not transgressed the strictures of 11 U.S.C. § 727(a), and granted the discharge. The district court affirmed these rulings, and the debtor now appeals.

We agree with the creditor that there are suspicious circumstances here. As an appellate court, however, we are not free to second-guess the management of pretrial discovery, weigh the evidence afresh, or make independent judgments about the credibility of witnesses. Instead, our function is to examine the record with care, defer to the properly supported factual findings of the court of first instance, determine the applicable law, and ensure that the trier properly applied it to the facts as found. Having performed these tasks, we conclude, as did the district court, that the decision of the bankruptcy court is impervious to the creditor's attack. Consequently, we affirm the judgment below.

## I.

### Background

The underlying bankruptcy proceeding has been pending since 1995. We do not here attempt to rehearse the entire history of the case, but, rather, offer a synopsis of the facts designed to give needed context to the issues on appeal.

Joan E. Carp (the debtor) and her husband, Stephen Carp, filed a joint petition for Chapter 7 bankruptcy relief in February 1995. See 11 U.S.C. §§ 701-784. Among the affected creditors was the appellant, Richard W. Gannett. Gannett filed a timely proof of claim for $82,093.85, plus interest and costs, arising out of the rendition of legal services.

Several months later, Gannett commenced an adversary proceeding, objecting to the Carps' proposed discharge in bankruptcy. He relied on 11 U.S.C. § 727(a)(2) and (4), arguing that the Carps had willfully failed to disclose their ownership interests in a number of assets, including a parcel of real property located at 824 Dedham Street, Newton, Massachusetts (the Newton property) and three automobiles. With regard to the Newton property Gannett asserted that the Carps owned an equitable interest in it even though legal title reposed in one Mordechay Pupkin. Gannett further asserted that the Carps were using Pupkin as a straw in order to defraud creditors; that they had funded Pupkin's mortgage payments; and that any semblance of rental payments was a sham. With respect to the cars, Gannett alleged that the Carps had attempted to defraud their creditors by giving their children legal title to the automobiles. He argued that it was absurd to think that the children owned three vehicles while the parents themselves owned none. The Carps denied the material allegations of Gannett's complaint.

To say that matters did not proceed smoothly would be a gross understatement. Gannett served deposition notices and interrogatories in October 1995 and added a request for production of documents in January of the following year. On February 29, 1996, he moved to compel, pointing out that the Carps had not replied to these discovery requests. The bankruptcy court granted the motion. When the Carps still did not cooperate, Gannett moved for the entry of a default judgment. The Carps responded that they would not submit to discovery because they were the targets of a criminal investigation for bankruptcy fraud being conducted by the United States Department of Justice.

On May 16, 1996, the bankruptcy court again ordered the Carps to provide discovery. The court also imposed a $750 monetary sanction and continued Gannett's motion for entry of a default judgment. On August 22, 1996, the bankruptcy court denied that motion.

Meanwhile, the criminal investigation went forward. On October 14, 1996, the government filed a criminal information against Stephen Carp, charging him with one count of bankruptcy fraud, 18 U.S.C. § 152, related to his alleged failure to disclose an equitable ownership interest in the Newton property. On April

27, 1997, Stephen Carp pled guilty to this charge. The district court sentenced him the next day.[1]

The bankruptcy court had wisely continued the case until the outcome of the criminal prosecution was finally determined. In the interim, the court maintained careful watch, holding no fewer than five status conferences from the fall of 1996 through the spring of 1997. From time to time, Gannett mentioned that he was still awaiting discovery materials but no action was taken. At a status conference held on April 24, 1997, Gannett again raised the issue, and the debtor acknowledged that she had not yet complied with the discovery orders because of her asserted Fifth Amendment privilege. The court stated that there was no point in attempting to press forward with discovery if the debtor was going to plead the Fifth Amendment and directed the parties to file a joint status report following Stephen Carp's sentencing.

Once the criminal prosecution had ended[2] and the adversary proceeding against Stephen Carp had been resolved, see supra note 1, the bankruptcy court set a trial date for the adversary proceeding against the debtor. Prior to the scheduled

_____

[1]Following Stephen Carp's admission of guilt, Gannett moved for summary judgment against him in the pending adversary proceeding. See Fed. R. Bankr. P. 7056. The bankruptcy court granted this motion and denied Stephen Carp a discharge. Because Stephen Carp's case is closed, we treat Joan Carp as the sole debtor.

[2]The debtor was never criminally charged.

-5-

start of trial, the trustee in bankruptcy moved to consolidate that proceeding with an adversary proceeding that he (the trustee) had brought against Pupkin. The court consolidated the two actions and vacated the scheduled trial date. The trustee eventually settled with Pupkin, thus undoing the consolidation.

The next bump in this long and winding road occurred in April of 2001 when the bankruptcy court scheduled an evidentiary hearing on the debtor's discharge for October 3 of that year. Gannett dawdled for several months and then, on August 23, filed a renewed motion for entry of a default judgment or, in the alternative, for additional time to conduct discovery. At a hearing held on September 24, the court denied both prayers on condition that the debtor submit to a deposition prior to trial and produce the previously requested documents before the deposition. The debtor delivered the designated documents and appeared for a deposition on October 1. Although she did not assert her Fifth Amendment privilege, she nonetheless refused to answer certain questions pursuant to her counsel's instructions.

Gannett made no further complaint about inadequate or untimely discovery, and the bankruptcy court conducted the previously scheduled bench trial on October 3. The debtor testified without asserting any privilege against self-incrimination. In an ore tenus decision, the bankruptcy court found the debtor credible and concluded that there was insufficient

proof that she had either knowingly concealed property or vouchsafed a false oath. Discerning no basis for the denial of a discharge, the court entered judgment accordingly. The district court affirmed, see Gannett v. Carp (In re Carp), No. 02-10086 (D. Mass. Aug. 30, 2002) (unpublished), and this appeal followed. We have jurisdiction under 28 U.S.C. § 158(d).

## II.

## Standard of Review

Notwithstanding the fact that we are the second-in-time reviewers, we cede no special deference to the district court's determinations. Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997). Rather, our review directly addresses the bankruptcy court's decision. Gronan v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002). We scrutinize that court's findings of fact for clear error and its conclusions of law de novo. Id.

The application of the Bankruptcy Code to a particular case poses a mixed question of law and fact, which this court reviews for clear error unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved. See Miller v. Peterson (In re Indep. Eng'g Co.), 197 F.3d 13, 16 (1st Cir. 1999). Under the clear error standard, the trier's findings of fact and the conclusions drawn therefrom ought not to be set aside "unless, on the whole of the record, we form a strong,

-7-

unyielding belief that a mistake has been made." Cumpiano v. Banco Santander, 902 F.2d 148, 152 (1st Cir. 1990). It follows that if the bankruptcy court's findings are supportable on any reasonable view of the record, we are bound to uphold them. See Boroff v. Tully (In re Tully), 818 F.2d 106, 109 (1st Cir. 1987); see also Anderson v. Beatrice Foods Co., 900 F.2d 388, 392 (1st Cir. 1990) (warning that appellate review of "fact-dominated issues cannot be allowed to descend to the level of Monday-morning quarterbacking").

## III.

## The Merits

Although Gannett's asseverations are not neatly segregated, we distill them into two principal lines of argument. First, he challenges the bankruptcy court's decision to allow the debtor to testify without penalty after repeatedly having invoked the Fifth Amendment to insulate herself from furnishing discovery — and he couples this challenge with a more general objection to the court's oversight of the discovery process. Second, he calumnizes the bankruptcy court for its refusal to block the debtor's discharge under 11 U.S.C. § 727(a). We discuss these two lines of argument sequentially.

## A.

## The Fifth Amendment

We turn first to those contentions related to the debtor's invocation of the Fifth Amendment. We review a bankruptcy

court's discovery decisions for abuse of discretion — and that discretion is very wide. Brandt v. Wand Partners, 242 F.3d 6, 18 (1st Cir. 2001). The fact that the Fifth Amendment is implicated in Gannett's litany of discovery-related complaints does not serve to alter this standard of review. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 575-77 (1st Cir. 1989); see also Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996). Unless we can fairly say that the bankruptcy court abused this wide discretion, its management of the pretrial discovery process must be respected.

As a matter of law, Gannett's claim that the bankruptcy court should not have allowed the debtor to testify without sanction lacks force. Gannett does not dispute — nor could he — that a debtor in a bankruptcy proceeding can invoke the Fifth Amendment. See, e.g., McCormick v. Banc One Leasing Corp. (In re McCormick), 49 F.3d 1524, 1526 (11th Cir. 1995); Martin-Trigona v. Belford (In re Martin-Trigona), 732 F.2d 170, 175 (2d Cir. 1984). He does not allege — nor could he on this record — that the debtor's invocation of the privilege was chimerical or otherwise improper. Rather, Gannett's thesis is that pleading the Fifth Amendment in a civil proceeding should yield consequences, and that the condign consequence of the debtor's action should have been preclusion. In other words, the bankruptcy court ought not to have allowed the debtor to testify because she did not provide discovery until the eve of trial.

The short answer to this importuning is that Gannett did not preserve the issue for appeal. After the documents were finally tendered and the deposition held, Gannett never complained to the bankruptcy court that the discovery was either too scanty or too tardy. By the same token, he did not question the propriety of the objections interposed by the debtor's counsel during the deposition. To cap matters, far from asserting that the debtor's testimony should be precluded by her longstanding invocation of the Fifth Amendment, he himself called the debtor to the witness stand. If delayed discovery, once received, is incomplete, inadequate, or timed so as to impede effective trial preparation, the aggrieved party must object in advance of trial. The failure to do so constitutes a failure to raise the issue at the proper time and in the proper setting. That failure bars the aggrieved party from raising the issue on appeal. See Hemingway Trans., Inc. v. Kahn (In re Hemingway Trans., Inc.), 993 F.2d 915, 935 (1st Cir. 1993); LaRoche v. Amoskeag Bank (In re LaRoche), 969 F.2d 1299, 1305 (1st Cir. 1992).

To be sure, Gannett did assert at the September 24 hearing that the debtor should not be permitted to testify at trial because she had persistently invoked the Fifth Amendment. In response to that assertion, the bankruptcy court ordered that the debtor produce documents and submit to an immediate deposition. If this was not a satisfactory ameliorative, Gannett was obliged to

renew his complaint following the receipt of the documents and the taking of the deposition.  Cf. DesRosiers v. Moran, 949 F.2d 15, 22 (1st Cir. 1991) (stating that when a party proceeds with trial without complaining about delayed discovery, the court will not permit that party to complain after judgment).  He did not do so.

Gannett's fallback position is that the bankruptcy court erred by refusing to enter a default judgment against the debtor. In the last analysis, however, the decision as to whether discovery sanctions are warranted and the choice of what sanctions should be imposed are matters within the sound discretion of the trial court.[3]  Poulin v. Greer, 18 F.3d 979, 984 (1st Cir. 1994).  The disallowance of a discharge — which would have been the effective result of a default judgment in this case — is strong medicine. There is no basis either in the record or in the law for us to second-guess the bankruptcy court's discretionary refusal to prescribe so harsh a penalty.

In a modest variation on this theme, Gannett suggests that the bankruptcy court at least should have drawn a negative inference against the debtor due to her repeated invocation of the Fifth Amendment privilege.  But in a civil proceeding, the drawing

_____

[3]Gannett's claim that the debtor should have been denied a discharge because of her failure to comply with court orders could have been framed as a claim under 11 U.S.C. § 727(a)(6)(A) rather than as an argument that sanctions were wrongly withheld.  But Gannett never advanced such a claim in the bankruptcy court, and he therefore has forfeited it.

-11-

of a negative inference is a permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment. See Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 678 (1st Cir. 1996). While the law does not forbid adverse inferences against civil litigants who refuse to testify on Fifth Amendment grounds, see Baxter v. Palmigiano, 425 U.S. 308, 318 (1976), it does not mandate such inferences. When all is said and done, the trial court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment in a particular civil case.

The bankruptcy court, in the exercise of this discretion, chose not to draw such an inference here. The record evinces no special factors suggesting that this choice was arbitrary or capricious, and we are hesitant to overturn a trial court's discretionary decision to afford an extra measure of protection to a litigant's constitutional right against self-incrimination. Cf. Serafino, 82 F.3d at 518 (emphasizing that courts must take special pains to ensure that the Fifth Amendment privilege is safeguarded). There was no error.[4]

---

[4]Gannett's argument that the burden of persuasion should have shifted to the debtor as a result of her invocation of the Fifth Amendment is simply a restatement of the argument that the court should have drawn a negative inference against the debtor. Thus, we reject this version of the argument for the reasons discussed above.

We give short shrift to Gannett's final discovery-related point: that the bankruptcy court failed to balance Gannett's right to a fair trial against the debtor's Fifth Amendment interests. Once again, the specter of a procedural default looms. Although Gannett did object generally to the bankruptcy court's management of the discovery process, he never specifically asserted an infringement of his right to a fair trial. More importantly, he did not make any claim regarding the unfairness of proceeding after he had secured discovery. Thus, the bankruptcy court had neither the occasion nor the opportunity to decide whether the discovery that Gannett belatedly received was sufficient to cure any prior harm. If that discovery — i.e., the document production and deposition — had not rectified the situation and restored the balance, Gannett had an affirmative obligation to come forward and request further relief from the court. See Macaulay v. Anas, 321 F.3d 45, 52 (1st Cir. 2003) (holding that "[a] party who has the opportunity to ask the trial court for relief but fails to do so forfeits the right to claim, on appeal, that the relief should have been granted"); Anderson, 900 F.2d at 397 (similar).

Even were we to reach the merits of this claim, Gannett's cause would not prosper. He relies chiefly upon our Serafino decision to undergird the argument that the bankruptcy court failed adequately to consider his right to a fair trial. But that

decision simply cannot support the weight that Gannett places upon it.

It is true that <u>Serafino</u> stands for the proposition that "one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding." 82 F.3d at 518. It is also true, however, that the balancing of these factors is left largely to the informed discretion of the trial court. <u>See id.</u> The court need not make an elaborate series of written findings. <u>Cf.</u> <u>United States</u> v. <u>LaCruz</u>, 902 F.2d 121, 123-24 & n.1 (1st Cir. 1990) (holding that explicit findings as to the probative worth/prejudicial effect balance under Evidence Rule 403 are not always required). What counts is that the court's implicit conclusion — that Gannett would receive a fair trial notwithstanding the delayed discovery — is satisfactorily anchored in the record. After all, the bankruptcy court made significant efforts to ensure that Gannett could gain access, prior to trial, to the information necessary to prosecute his case. Moreover, Gannett never identified what information he coveted that was not available from other sources. Under these circumstances, we are at a loss to see how Gannett's rights were unfairly impugned.

## B.

## 11 U.S.C. § 727(a)

Gannett next contends that the bankruptcy court erred on the merits in granting the debtor a discharge. As the objecting

party, Gannett had the burden of proving that the debtor should be denied a discharge. See Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 136 (1st Cir. 1992), abrogated on other grounds by Field v. Mans, 516 U.S. 59, 72-75 (1995). Although the ultimate decision about whether to grant or withhold a discharge is a mixed question of law and fact, Gannett takes dead aim at the district court's factual findings. Accordingly, we "review only for clear error, with 'due regard . . . to the opportunity of the bankruptcy court to judge the credibility of witnesses.'" In re Burgess, 955 F.2d at 137 (quoting Fed. R. Bankr. P. 8013) (alteration in original).

Gannett identifies two statutory bases for denying a discharge in this case. We treat these in the ensemble. In doing so, we note that one of the Bankruptcy Code's core purposes is to give worthy debtors a fresh start. See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 398 (1st Cir. 2002). Thus, exceptions to discharge should be construed narrowly. Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 17 (1st Cir. 2002).

Gannett's first sortie involves section 727(a)(2) of the Bankruptcy Code, which provides in pertinent part that the bankruptcy court shall withhold a discharge if

> the debtor, with intent to hinder, delay, or
> defraud a creditor or an officer of the estate
> . . . has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to
> be transferred, removed, destroyed, mutilated,
> or concealed — (A) property of the debtor,

> within one year before the date of the filing
> of the petition; or (B) property of the
> estate, after the date of the filing of the
> petition . . . .

11 U.S.C. § 727(a)(2).

Gannett's second sortie involves section 727(a)(4) of the Bankruptcy Code, which provides in pertinent part that a discharge shall not be granted if "the debtor knowingly and fraudulently, in or in connection with the case — (A) made a false oath or account." Id. § 727(a)(4). Under that proviso, a discharge can be refused only if the false oath "relat[ed] to a material fact." In re Tully, 818 F.2d at 110.

Each of these provisions requires a showing of fraudulent intent. See In re Chavin, 150 F.3d 726, 727 (7th Cir. 1998). The bankruptcy court found that Gannett had failed to make this showing. Because the determination of intent depends largely upon an assessment of the debtor's credibility, respect for the bankruptcy court's factual findings is particularly appropriate in this context. See In re Burgess, 955 F.2d at 137. Even when the totality of the circumstances might plausibly support an inference of skullduggery, the bankruptcy court's contrary finding must be credited unless the evidence is so one-sided as to compel the inference of fraud. See Palmacci v. Umpierrez, 121 F.3d 781, 790 (1st Cir. 1997).

Here, the bankruptcy court found the debtor to be completely credible, and Gannett's insinuations certainly do not

-16-

compel the opposite conclusion. That seemingly ends the matter. In re Burgess, 955 F.2d at 137. Gannett, however, seeks to capsize the bankruptcy court's finding on the ground that intent or culpability should be imputed to the debtor because her husband acted fraudulently (a fact that is, at this stage, beyond cavil) and she was her husband's alter ego or agent.

We do not reach the merits of the first of these suggestions because Gannett neglected to raise the alter ego theory before the bankruptcy court. See In re LaRoche, 969 F.2d at 1305 (holding that a failure to advance an issue before the bankruptcy court forfeits the right to raise it on appeal). That a party may not advance an argument for the first time on appeal "is a virtually ironclad rule" in this circuit, Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003), and this case presents no excusatory circumstances sufficient to persuade us to relax the rule.

Gannett's agency theory is properly before us — but it is unavailing. He says, in effect, that the debtor was Stephen Carp's agent because they had been married for over thirty years and had been involved in real estate projects together in the past. The bankruptcy court rejected this theory on the merits. That ruling is beyond reproof.

The sins of the husband are not automatically visited upon the wife. Thus, the existence of a marital relationship does

not itself prove an agency relationship.  See Rousseau v. Gelinas, 507 N.E.2d 265, 268 (Mass. App. Ct. 1987);  Fennell v. Wyzik, 422 N.E.2d 1387, 1389 (Mass. App. Ct. 1981).[5]  Similarly, the fact that the Carps may have done business together in the past is insufficient to show that the bankruptcy court committed clear error in finding a lack of agency vis-à-vis the Newton property.  See Dudley v. Hannaford Bros. Co., 333 F.3d 299, 311 (1st Cir. 2003) (explaining that "[w]hen a [trial] court chooses between two plausible but conflicting interpretations of the evidence, its choice cannot be clearly erroneous");  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001) (similar).

Gannett has yet another string to his bow.  In the criminal case, Stephen Carp admitted to being the equitable owner of the Newton property.  Building on this foundation, Gannett contends that the debtor also had an undisclosed equitable interest in that property because, under Massachusetts law, Stephen Carp's equitable interest would become a part of their marital estate upon divorce.  Gannett insists that the failure to list this interest rendered the debtor's oath false (and, thus, violated 11 U.S.C. § 727(a)(4)).

---

[5]Of course, marital partners may be each other's agents if other factors lead to that conclusion.  See, e.g., Fennell, 422 N.E.2d at 1389 (imputing misrepresentation of wife to husband when the couple jointly owned the subject property, the wife held herself out as able to speak authoritatively as to the condition of the property, and the couple had communicated about the relevant issues).  The record in the case at hand lacks any such evidence.

The bankruptcy court found that this circumstance did not compel the conclusion that the debtor erred in not listing that interest as part of her bankruptcy estate. In this regard, the bankruptcy court noted that the debtor had made no contribution to the purchase of the Newton property and had no interest in it at the time of the bankruptcy proceedings.

As a matter of law, the bankruptcy court was correct. Cf. id. § 541(a)(5)(B) (stating that property received as a result of a property settlement or agreement of divorce is property of the estate if the debtor acquires or becomes entitled to acquire it within 180 days of the date of filing bankruptcy). Thus, even assuming for argument's sake that Stephen Carp's equitable interest in the Newton property was part of the marital estate — a matter on which we take no view — it was not property of the debtor's bankruptcy estate at the relevant time.

At the risk of carting coal to Newcastle, we add that even were we to classify this contingent interest as property of the bankruptcy estate, that fact alone would not be enough to trigger section 727(a)(4). Gannett would still have to show that the exclusion of the property from the debtor's schedules was done with intent to hinder, delay, or defraud creditors. It is not at all difficult to imagine innocent reasons for the failure to mention such a contingent interest — especially since the debtor testified (credibly, in the bankruptcy court's estimation) that she

-19-

was unaware that she held any such interest. To the extent that Gannett invites us to declare as a matter of law that a spouse's failure to include a contingent and as yet undetermined interest in real property — an interest that will arise only in the event of divorce — in a bankruptcy petition warrants denial of a discharge, we decline the invitation.

Gannett's last-ditch claim is that the debtor should have been denied a discharge because she used and controlled automobiles that were omitted from her bankruptcy schedules. This claim focuses on the debtor's assertion that she did not own even one car, yet her two children (neither of whom were employed full-time) owned three vehicles between them. Gannett argued vigorously to the bankruptcy court that the debtor placed the automobiles in her children's names for the purpose of defrauding creditors. The bankruptcy court did not buy the argument.

The situation as to ownership of the vehicles strikes us as irregular. We are not, however, a court of first instance. The bankruptcy judge saw and heard the witnesses and found the debtor to be credible. The mere fact that the situation seems suspect is not sufficient to justify disregarding this credibility call. See In re Burgess, 955 F.2d at 137. The bankruptcy court reasonably could have believed, for example, that the placing of title in the children's names was simply another manifestation of Stephen Carp's scheming, and that the debtor was unaware of his connivance. Given

this record, there is no principled way in which we can disturb the bankruptcy court's judgment.

## IV.

## Conclusion

We need go no further. It is not enough that reasonable minds might differ regarding either the bankruptcy court's management of pretrial discovery or its evaluation of the evidence presented at trial. For the reasons elucidated above, we uphold both the bankruptcy court's decision and the district court's affirmance of that decision.

**Affirmed.**