**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-2640

IN RE: JOHN J. DIAMOND, III,

Debtor

----------------------------------------

PREMIER CAPITAL, INC.,

Plaintiff, Appellant,

v.

JOHN J. DIAMOND, III,

Defendant, Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Hon. Steven J. McAuliffe, <u>U.S. District Judge</u>

_____

Before
Torruella, <u>Circuit Judge</u>,
Rosenn, <u>Senior Circuit Judge</u>,[*]
Howard, <u>Circuit Judge</u>.

_____

<u>Randall L. Pratt</u> was on brief for appellant.
<u>James F. Molleur</u> was on brief for appellee.

_____

July 13, 2004

_____

[*] Of the United States Court of Appeals for the Third
Circuit, sitting by designation.

**ROSENN**, <u>**Senior Circuit Judge**</u>.  A bankruptcy proceeding is almost always disappointing to creditors.  This is especially true for creditors who have had no commercial transactions over the years with a debtor and have derived no profits from him over time.  The bankruptcy is especially frustrating to a large unsecured creditor whose credit arises out of a loan to the debtor who, as in this case, has a substantial annual income with the apparent capacity to pay the debt over a reasonable period of time.

The task of this court, however, is not to philosophize over the purpose or policy of bankruptcy proceedings, but to review the decision of the bankruptcy judge in this case to ascertain whether his findings of fact were clearly erroneous or whether he committed legal errors.  Premier Capital, Inc. (Premier), the principal creditor of John J. Diamond, the debtor, opposed Diamond's discharge in bankruptcy for unlawful transfer, unlawful concealment, and false oath in violation of the Bankruptcy Code.  After a hearing and the taking of testimony, the Bankruptcy Court found no violation by Diamond.  Premier appealed to the United States District Court for the District of New Hampshire.  It affirmed the Bankruptcy Court's decisions.  Premier appealed to this court.  We also affirm.

I.

The following facts are undisputed.  Diamond defaulted on the two promissory notes that he executed in favor of Premier in

1986 and 1987. In May 1999, Premier brought an action in a New Hampshire state court and obtained a judgment in the amount of $131,215.12 plus statutory interest and costs. Subsequently, the parties unsuccessfully attempted to negotiate a settlement of the judgment.

In the course of the negotiation, Diamond resubmitted an unsigned affidavit to Premier on June 1, 2000, which was first submitted in January 1999. The affidavit purported to list his assets and liabilities, but did not include his ownership interest in two corporations, Dafil, Inc., and Real Estate Settlement Services, Inc. Diamond resubmitted the affidavit to Premier. On July 10, 2000, Premier obtained a trustee attachment. Between July 18 and 26, 2000, Diamond liquidated assets that he held in an investment account with Solomon Smith Barney and a life insurance policy that he owned with the Prudential Insurance Company of America. Diamond deposited the proceeds in the trust account of his then counsel, Terrie Harman. In a letter, dated July 21, 2000, addressed to counsel for Premier, attorney Harman informed him that the Internal Revenue Service (IRS) was the holder of a priority claim in the approximate amount of $75,000. She stated that she had advised Diamond to file a Chapter 7 bankruptcy petition, and that the bankruptcy would yield nothing to Premier. Attorney Harman attached draft Schedules A through F to her letter in connection with Diamond's proposed bankruptcy filing, and tax

-3-

returns for the years of 1997 and 1998. The attached schedules disclosed Diamond's ownership interest in the two corporations and a completed and another pending transfer of funds to attorney Harman's trust account. Draft Schedule E also disclosed unsecured tax liabilities, but having priority, in the amount of $75,000.

On October 6, 2000, Diamond filed a petition under Chapter 13 of the Bankruptcy Code. This was converted on October 24, 2000, to a Chapter 7 petition. Diamond, a real estate broker, was acting on several real estate deals when he filed for bankruptcy. His petition failed to list these transactions as executory contracts or as contingent commissions.

In March 2001, Premier filed a six-count complaint in the Bankruptcy Court, seeking denial of Diamond's discharge pursuant to §§ 727(a)(2) and 727(a)(4) of the Bankruptcy Code. The Bankruptcy Court, Vaughn, C.J., conducted a two-day trial in August 2002. In March 2003, the court issued a memorandum opinion dismissing all counts of Premier's complaint. Premier appealed the dismissal of three of its counts to the District Court. These counts challenged Diamond's transfer of funds to attorney Harman's trust account, his failure to disclose ownership interest in the two corporations, and his failure to disclose real estate brokerage commissions due him on his bankruptcy schedules. The counts also attacked his alleged false testimony in a creditors' meeting. The District Court, McAuliffe, J., by a memorandum opinion, affirmed the Bankruptcy

-4-

Court's dismissal of the three counts. This appeal followed.

## II.

The District Court had appellate jurisdiction under 28 U.S.C. §§ 158(a)(1) and 158(c)(1). We have appellate jurisdiction to review the District Court's decision under 28 U.S.C. § 158(d).

"Notwithstanding the fact that we are the second-in-time reviewers, we cede no special deference to the district court's determinations. Rather, our review directly addresses the bankruptcy court's decision. We scrutinize that court's findings of fact for clear error and its conclusions of law de novo." Gannett v. Carp (In re Carp), 340 F.3d 15, 21 (1st Cir. 2003) (citations omitted).

> The application of the Bankruptcy Code to a particular case poses a mixed question of law and fact, which this court reviews for clear error unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved. Under the clear error standard, the trier's findings of fact and the conclusions drawn therefrom ought not to be set aside unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made. It follows that if the bankruptcy court's findings are supportable on any reasonable view of the record, we are bound to uphold them.

Id. at 22 (internal citations and quotation marks omitted).

## III.

Section 727(a) of the Bankruptcy Code enumerates a debtor's conduct that can preclude a Chapter 7 debtor's discharge

in bankruptcy.  Premier invoked §§ 727(a)(2)(A) and (a)(4)(A) as a bar to Diamond's discharge.  Section 727(a) provides in relevant part:

> The court shall grant the debtor a discharge, unless . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition. . . . [or]
> (4) the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account.

11 U.S.C. § 727(a)(2)(A) and (a)(4)(A).

To deny a discharge to a debtor under § 727(a)(2), an objector must show by a preponderance of the evidence that (1) the debtor transferred, removed, or concealed (2) his or her property (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor. Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2003). Under § 727(a)(4)(A), a debtor can be denied a discharge only if he (1) knowingly and fraudulently made a false oath, (2) relating to a material fact in connection with the case.  Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).

> Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy, and, for that reason, the

> claimant must show that his claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a). The statutory requirements for a discharge are construed liberally in favor of the debtor and the reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural. On the other hand, we have noted that the very purpose of . . . § 727(a)(2) . . . is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.

Palmacci v. Umpierrez (In re Umpierrez), 121 F.3d 781, 786 (1st Cir. 1997) (internal citations, quotation marks and brackets omitted).

IV.

Premier alleged in count three of its complaint that during the period July 18, 2000 to July 26, 2000, Diamond transferred the sale proceeds from the liquidation of his Solomon Smith Barney account and Prudential life insurance policy to the trust account of his attorney, Terrie Harman, with the intent to hinder, delay or defraud Premier. Diamond did not dispute that he transferred the funds, and that the transfers occurred after Premier had obtained a trustee process on other accounts held by him. The funds transferred were not subject to Premier's trustee process.

The Bankruptcy Court concluded that count three must fail for two reasons. First, Attorney Harman "identified" those transfers to Premier, "some of which had not yet occurred," in the

draft bankruptcy schedules attached to her letter of July 21, 2000. Second, Diamond "maintained control of these funds," even though they had been transferred to his attorney's trust account. The Bankruptcy Court reasoned further:

> Although bankruptcy had not yet been filed, [Premier], with knowledge of these transfers, took no action to place a lien on the funds. The mere fact that these transfers were immediately disclosed to [Premier] negates any evidence of intent to hinder, delay or defraud [Premier].

Section 727 requires a showing of actual intent, nothing less. In re Watman, 301 F.3d at 8. "The determination of actual intent is a finding of fact. Often, the intent issue will turn on the credibility and demeanor of the debtor, and in such circumstances, we typically defer to the bankruptcy court's conclusions." Id. (citations omitted).

On appeal, Premier does not dispute the Bankruptcy Court's findings of fact underlying its conclusion that there was no evidence to show that Diamond had the actual intent to "hinder, delay or defraud." Instead, Premier cites a number of cases, especially In re Watman, 301 F.3d at 8 (listing a seven-factor test for showing fraudulent intent), to support its argument that Diamond had the actual intent to defraud it.

We are not convinced that the Bankruptcy Court's dismissal of Premier's count three is clearly erroneous. It is not disputed that attorney Harman disclosed a completed transfer and

another pending transfer of funds to her trust account in draft Schedule B (personal property) attached to her letter of July 21, 2000. Attorney Harman clearly informed Premier that IRS was the holder of a priority claim in the amount of $75,000, and that all assets of Diamond's bankruptcy estate would be used to satisfy the IRS priority claim. Premier does not dispute the IRS claim. The record shows that IRS recorded a tax lien in the amount of $12,544.20 against Diamond on July 21, 2000. There is nothing covert, therefore, about Diamond's transfer of funds to attorney Harman. Additionally, the transferred funds were not legally beyond Premier's reach. Premier could have placed a lien on the funds, but took no action.

Because the Bankruptcy Court's findings of facts and its conclusion are supportable on a reasonable view of the record, we are bound to uphold them. In re Carp, 340 F.3d at 22.

V.

Premier alleged in count one that Diamond should be denied a discharge because, with the intent to hinder, delay, or defraud, he concealed his ownership interest in the two corporations, Diafil, Inc., and Real Estate Settlement, Inc., in his unsigned affidavit resubmitted in June 2000. It is not disputed that Diamond failed to list the two corporations in that affidavit.

Diamond testified that he was in a state of stress as a

-9-

result of his son's substance abuse problem and the dissolution of his marriage, which ended in divorce in September 2000. As to the affidavit, he testified that, since it was being prepared for the purpose of settlement negotiations, he included only assets that could readily be turned into cash. He did not believe that his ownership interest in the two closely-held corporations had any readily ascertainable value to a third party. The Bankruptcy Court found his testimony credible and his explanation logical. Furthermore, as found by the Bankruptcy Court, attorney Harman disclosed Diamond's ownership interest in the two corporations in draft Schedules B and F attached to her letter of July 21, 2000. Diamond also disclosed the same information in his bankruptcy filings.

On appeal, Premier does not dispute the Bankruptcy Court's findings of fact underlying its conclusion that there is no evidence to show that Diamond had the actual intent to defraud Premier. Instead, Premier argues only that it was not for Diamond to decide which assets had value and need be disclosed. This argument, however, is not sufficient to show that the court's conclusion is clearly erroneous. Although Diamond failed to disclose his ownership interest in an earlier unsigned affidavit, he nonetheless disclosed the information in the draft bankruptcy schedules sent to Premier more than three months before he filed for bankruptcy. He also disclosed the same information in the

bankruptcy filings.

Because the Bankruptcy Court's findings of facts and its conclusion are supportable on a reasonable view of the record, we are bound to uphold them.  In re Carp, 340 F.3d at 22.

## VI.

Premier asserted in count five of the complaint that pursuant to § 727(a)(4) of the Bankruptcy Code, Diamond should be denied a discharge because he gave a false oath by failing to list the real estate commissions due him in his bankruptcy filings, and gave false testimony in a creditors' meeting.

Diamond testified at trial that he did not know what an executory contract was, and that he did not believe that the commissions were his until the real estate transaction actually closed.  Although it seems incredible that a real estate broker would not know what was an executory contract, the Bankruptcy Court found his testimony credible for a "lay person" and his explanation valid.  The court noted the "debate" in case law regarding when a real estate broker was deemed to have earned his commissions. See Parsons v. Union Planters Bank (In re Parsons), 262 B.R. 475, 478-79 (B.A.P. 8th Cir. 2001) (noting that under Missouri law, the general rule, as it is in many states, is that a real estate commission is earned when the broker or agent produces a buyer "ready, willing and able to buy" on the terms specified by the seller, whether or not the sale is completed, but where the sale's

contract is conditional, such as upon the closing of the sale, the contract does not become an enforceable obligation and the broker does not earn a commission until the conditions are met); Tully v. Taxel (In re Tully), 202 B.R. 481 (B.A.P. 9th Cir. 1996) (noting the general rule that once a broker locates a buyer who is ready, willing, and able to buy the property on terms acceptable to the seller, the broker has earned the commission, even though the commission is not paid until a post-petition closing, but where a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate).

On appeal, Premier argues that Diamond had an affirmative duty to disclose in his bankruptcy filings any ownership interest, including all equitable interest. Premier also disagrees with the Bankruptcy Court's crediting of Diamond's testimony that he did not know what was an executory contract. Premier notes that Diamond did not leave petition Schedule G (Executory Contract) blank, but, instead, chose to answer "none." Premier asserts that Diamond's explanation was insufficient to rebut the inference of fraud.

We note that Premier has not alleged or briefed that at the time Diamond filed for bankruptcy he had either secured a "ready, willing and able" buyer or closed a real estate transaction to have earned the undisclosed commissions. The question here is

-12-

not whether the commissions should be deemed to be property of Diamond's bankruptcy estate. Premier's brief indicates that the trustee eventually recovered more than $30,000 from Diamond's unreported executory contracts and commissions. The issue here is whether the Bankruptcy Court committed a clear error in concluding, based on its view of the evidence, that Diamond did not knowingly and fraudulently make a false oath or account in his bankruptcy filings.

"[T]he existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made." Santana Olmo v. Quinones Rivera (In re Quinones Rivera), 184 B.R. 178, 185 (D.P.R. 1995) (citing Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 136 (1st Cir. 1992), abrogated on other grounds, Field v. Mans, 516 U.S. 59 (1995); In re Tully, 818 F.2d at 110). A determination concerning the presence of fraudulent intent largely depends upon an assessment of the credibility and demeanor of the debtor. Therefore, deference here to the bankruptcy court's factual findings is particularly appropriate. In re Burgess, 955 F.2d at 137.

Because the Bankruptcy Court's findings of facts and its conclusions of law are supportable on a reasonable view of the record, we are bound to uphold them. In re Carp, 340 F.3d at 22.

VII.

For the reasons set forth above, the District Court's decision affirming the Bankruptcy Court's dismissal of Premier's counts one, three and five is affirmed. Each party is to bear its own cost.