# United States Court of Appeals
## For the First Circuit

No. 10-1705

IN RE: BRUCE E. THUNBERG,

Debtor.

_____

BRUCE E. THUNBERG,

Appellant,

v.

MARC D. WALLICK,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before
Torruella, Boudin and Lipez,
Circuit Judges.

Christopher M. Lefebvre with whom Claude Lefebvre, Christopher Lefebvre, P.C. was on brief for appellant.
Andrew S. Richardson with whom Boyajian, Harrington & Richardson was on brief for appellee.

April 21, 2011

**Per Curiam**. Bruce Thunberg filed a Chapter 7 bankruptcy petition in August 2000, 11 U.S.C. §§ 701-784 (2006), and Marc Wallick was appointed trustee. An order by the bankruptcy court discharging Thunberg issued in December 2000, but in April 2002, the trustee sought to revoke the discharge on the ground that it had been procured by Thunberg's fraud. Id. § 727(d)(2). In August 2009, the bankruptcy court revoked the discharge, and the district court affirmed.[1] Thunberg now appeals from the revocation.

At issue is Thunberg's interest derived from a 1997 settlement agreement with his ex-wife incident to their divorce. The settlement agreement specified that, each December for the next 15 years, his former wife would pay Thunberg $30,000--$16,666.66 being designated in the agreement as alimony and $13,333.33 being designated as a property settlement payment. Thunberg's bankruptcy petition listed the $160,000 over the remaining 12 years as a property settlement, asserting that it was subject to two liens, and listed the $1,333 per month in alimony as income.

Nevertheless, according to testimony accepted by the bankruptcy judge, Thunberg (or his lawyer with Thunberg remaining silent) represented to the trustee that all the payments including the alimony were subject to the liens; he accelerated by private agreement with his ex-wife two of the payments without advising the

_____

[1]Thunberg v. Wallick, CA. No. 09-419 S, 2010 WL 1838003 (D.R.I. May 5, 2010); Wallick v. Thunberg (In re Thunberg), 413 B.R. 20 (Bankr. D.R.I. 2009).

-2-

trustee or the court; he used funds from two sets of payments in part for private purposes; and--it turned out--the liens on which he relied had not properly been perfected. The details are spelled out in the decisions of the bankruptcy and district courts and need not be repeated.

Ultimately, the bankruptcy court revoked Thunberg's discharge, agreeing with the trustee that Thunberg "acquired property that is property of the estate . . . and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee," 11 U.S.C. § 727(d)(2); cf. Boroff v. Tully (In re Tully), 818 F.2d 106, 110-12 (1st Cir. 1987). The district court wrote a cogent decision upholding the revocation.

On appeal, Thunberg argues that his actions were at worst honest mistakes. We agree that Thunberg largely avoided explicit false statements and that the finding of fraudulent intent depends in part on seeing a pattern of evasion and silence in the face of culpable knowledge and in part on inferences drawn from Thunberg's conduct. But the perception and inferences are rational, and there is nothing close to clear error, which is the test on review of factual findings, Gannett v. Carp (In re Carp), 340 F.3d 15, 21 (1st Cir. 2003).

Thunberg says that the bankruptcy court's understanding was flawed by a mistaken belief that no security interests covered

the payments; this is doubtful, but in any event Thunberg allowed the trustee and the court to believe that he was turning over whatever he received to secured creditors, which was not true, and he withheld knowledge of the accelerated payments. Further payments to the estate shortly before the trial did not undo Thunberg's earlier conduct and omissions. Olsen v. Reese (In re Reese), 203 B.R. 425, 431-32 (Bankr. N.D. Ill. 1997).

Thunberg also suggests (1) that the bankruptcy judge conflated the standard for denying a discharge with that for revoking a discharge and (2) that the factual inferences drawn do not support a holding of deliberate misconduct. There is no indication of the former; and, as to the latter, the ultimate findings met the statutory standard for revoking a discharge, and the factual inferences drawn were reasonable.

Affirmed.