**In re Michael A. GALLO, Jr., Debtor.**

**SANFORD INSTITUTION FOR SAVINGS, Plaintiff,**

v.

**Michael A. GALLO, Defendant.**

Bankruptcy No. 96–20690.
Adversary No. 96–2220.

United States Bankruptcy Court,
D. Maine.

May 21, 1997.

Thomas C. Bradley, Petruccelli & Martin, Portland, ME, for plaintiff.

James F. Molleur, Woodman & Edmands, Biddeford, ME, for defendant.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

This matter is before the Court on Sanford Institution for Savings's ("SIS") complaint to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A).[1] For the reasons stated below, this Court finds the debt to be dischargeable.

### I. FINDINGS OF FACT

In December 1989, Michael Gallo ("Debtor") requested a loan from SIS in the form of a standby letter of credit in favor of Peoples Heritage Bank. The letter of credit, in the amount of $250,000.00, was to support financing by Peoples Heritage Bank so that Debtor could develop a hotel in Ogunquit, Maine ("Ogunquit property"). Debtor, a real estate developer, had been a customer of SIS since the 1970s and over the years had entered into many loan agreements with SIS, including a $150,000.00 unsecured line of credit. Rodney Normand, President of SIS, handled much, if not all, of Debtor's business with SIS and was the officer who assisted Debtor with the letter of credit.

Normand brought Debtor's request to SIS's Board of Directors which approved the issuance of the letter of credit. However, because the amount was so large, the Board required as security a second mortgage on Debtor's home in Sanford ("Sanford property"), jointly with his wife, in addition to the second mortgage it would receive on the

---

**1.** Section 523(a)(2)(A) provides:

A discharge under section 727 ... does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud.

11 U.S.C. § 523(a)(2)(A).

Ogunquit property.[2] Normand testified that when he told Debtor that his loan was approved by the Board he also told Debtor that the second mortgage on his home would be required. Debtor testified that he was never informed of the requirement of a second mortgage on his home and he did not read the loan documents before he signed them.

In July 1989, five months prior to the letter of credit transaction, Debtor had transferred his interest in the Sanford property to his wife, Gail Gallo, as part of a settlement agreement pursuant to a divorce judgment. Debtor testified that SIS knew about his divorce and knew that Debtor was no longer living on the Sanford property when he requested the letter of credit. He also testified that he did not inform SIS that he had in fact transferred the Sanford property to his wife. Normand testified that no one at SIS knew Debtor was divorced or knew that he no longer had an interest in the Sanford property despite the fact that Debtor had some social interaction with Normand and members of the Board of Directors during the time of his separation and divorce from his wife.

Approximately four days after Debtor first requested SIS to issue the letter of credit, Normand presented the loan documents to Debtor for signature. It is unclear from the evidence exactly when, where, and in whose presence the documents were signed. What is clear is that Debtor signed his name to the documents, which included a second mortgage on the Sanford property; Debtor signed Gail Gallo's name to the documents without her knowledge or consent;[3] and Normand signed as a witness to both signatures even though he did not actually witness Gail Gallo's signature.

SIS delivered the letter of credit to Peoples Heritage Bank. SIS did not at any time search the registry of deeds to determine if Debtor had an ownership interest in the Sanford property, which he did not, or if there were liens or encumbrances on the property which would affect the value of its security. Normand testified that it was standard practice for SIS to conduct title searches on the property of its borrowers to determine the value of its security for loans but because Debtor was a good customer and always paid back borrowed funds, SIS had confidence in Debtor as an honest and trustworthy customer and did not see a need to check the title on his property.

On July 18, 1991, Peoples Heritage Bank made a final presentment of draft for the full amount of the letter of credit. On July 24, 1991, SIS issued payment to Peoples Heritage Bank in the amount of $250,000.00. On October 14, 1993, SIS obtained a default judgment in the York County Superior Court against Debtor in the amount of $301,594.22, which included $250,000.00 in principal, $43,798.22 in interest, $6,675.00 in attorneys' fees, and $1,121.00 in costs. This judgment has never been satisfied by Debtor and SIS now seeks to have the amount owed determined nondischargeable.

## II. CONCLUSIONS OF LAW

■ SIS argues two bases under which the Court should determine that the judgment debt is nondischargeable. First, Debtor transferred the Sanford property to his wife without SIS's knowledge or consent, contrary to a provision in the first mortgage requiring Debtor to obtain SIS's consent before transferring his interest in the property to a third party. Second, Debtor signed Gail Gallo's name to all of the loan documents without her knowledge and consent leaving SIS without a security interest in the Sanford property. The Court finds that Debtor's transfer of his interest in the Sanford property to his wife was not fraudulent despite the provision in the first mortgage. Normand testified that SIS had never invoked that provision when one spouse transferred ownership to the other spouse in the context of a divorce agreement. The Court

2. SIS already had a first mortgage on the Sanford property and Peoples Heritage Bank had the first mortgage on the Ogunquit property.

3. Debtor also testified that SIS had required his wife's signature on prior loan documents, he always signed her name without her knowledge or consent, and SIS was aware of this practice. Normand denied any knowledge of Debtor's forgeries.

finds that the consent provision was not intended to preclude this type of transfer and, therefore, the transfer was not fraudulent.[4] As discussed below, the only remaining issue is whether SIS justifiably relied on the signed loan documents when it issued the standby letter of credit to Peoples Heritage Bank.

 Under § 523(a)(2)(A), a creditor must show that the debtor knowingly made a false statement with the intent to deceive the creditor and upon which the creditor relied to his detriment. *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 140 (1st Cir.1992); *Bombardier Capital, Inc. v. Baietti (In re Baietti)*, 189 B.R. 549, 553 (Bankr.D.Me.1995). The level of reliance required is justifiable reliance. *Field v. Mans*, —— U.S. ——, ——, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995). The burden of proof is upon the creditor to prove the elements of the discharge exception by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

An examination of the evidence shows that there is no dispute that Debtor knowingly made a false representation to SIS. Debtor fraudulently signed his wife's name to the loan documents causing SIS to believe that Gail Gallo knew about the mortgage and consented to it. SIS clearly suffered damages because it had to pay on the letter of credit and has been unsuccessful in obtaining reimbursement from Debtor. Therefore, the only issue is whether SIS justifiably relied on the signed loan documents even though it did not investigate title to the Sanford property.[5]

 In *Field v. Mans*, the Supreme Court determined that " '[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.' " *Field,* —— U.S. at ——, 116

S.Ct. at 444 (quoting Restatement (Second) of Torts § 545A, Comment b (1976)). The Supreme Court further stated that "a person is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.' " *Id.* (quoting Restatement (Second) Torts § 541, Comment a). " '[I]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance . . . that he is required to make an investigation of his own.' " *Field,* —— U.S. at ——, 116 S.Ct. at 444 (quoting W. Prosser, Law of Torts, § 108 at 718 (4th ed.1971)). " '[T]he matter seems to turn upon an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.' " *Id.* (quoting Prosser, § 108 at 717).

The plaintiff here is a lending institution which, at the time of the letter of credit transaction with Debtor, had a practice of searching title records to verify the validity and value, two important elements of reliance, of its security for loans. SIS is a sophisticated plaintiff and, under the standards set forth in *Field v. Mans*, it had an obligation to conduct the most cursory of investigations, i.e., a title search. By failing to follow its own practice, SIS assumed the risk that its security would be worthless. Moreover, SIS should not have blindly relied on Gail Gallo's signature. Without a witness, SIS had no basis for believing that Gail Gallo in fact signed her name to the documents and, again, assumed the risk that she was not an informed party to the transaction.

The Court does not condone Debtor's conduct. However, under the law and the facts of this case, the Court is compelled to find that SIS could not have justifiably relied on

---

4. Even if SIS had previously enforced that provision of the mortgage in the divorce context, the Court believes that such a transfer would not be in contravention of the terms of the mortgage.

5. Although the parties are in disagreement over whether Debtor knew the transaction required a

second mortgage on the Sanford property, it is irrelevant for purposes of this decision. Whether SIS justifiably relied on the signed loan documents is dependent upon whether or not SIS had an obligation to investigate title to the property.

the loan documents as a representation that Debtor had an ownership interest in the Sanford property and that his wife was informed of and consented to the second mortgage on her home. The judgment debt owed to SIS is dischargeable. The foregoing represents findings of facts and conclusions of law pursuant to Fed. R. Bankr.P. 7052. An appropriate order shall enter.