In re: John J. Diamond, III          CV-03-192-M    10/24/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


In re:
John J. Diamond, III,
        Debtor


_____


Premier Capital, Inc.,
        Appellant

        v.                              Civil No. 03-192-M
                                        Opinion No. 2003 DNH 181
John J. Diamond, III,
        Appellee


                         **O R D E R**


        John J. Diamond, III ("Diamond"), is a Chapter 7 debtor.

Premier Capital, Inc. ("Premier Capital"), a judgment creditor,

appeals the decision of the bankruptcy court (Vaughn, J.) to

grant Diamond a discharge over its claims of unlawful transfer,

unlawful concealment, and false oaths, under 11 U.S.C. §§

727(a)(2) and 727(a)(4).  For the reasons given below, the

decision of the bankruptcy court is affirmed.

## Standard of Review

A bankruptcy court's findings of fact are not set aside unless clearly erroneous. Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997) (citing FED. R. BANKR. P. 8013; Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir. 1992); FED. R. CIV. P. 52(c), advisory committee's note to 1991 Amendment). However, a "bankruptcy court's legal conclusions, drawn from the facts so found, are reviewed de novo." Palmacci, 121 F.3d at 785 (citing Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997)).

> Absent either a mistake of law or an abuse of discretion, the bankruptcy court ruling must stand. See Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998). A bankruptcy court "may abuse its discretion by ignoring a material factor that deserves significant weight, relying on an improper factor, or, even if it [considered] only the proper mix of factors, by making a serious mistake in judgment." Id.

Picciotto v. Salem Suede, Inc. (In re Salem Suede, Inc.), 268 F.3d 42, 44 (1st Cir. 2001). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED. R. BANKR. P. 8013.

2

## Background

On May 6, 1999, Premier Capital obtained judgment against Diamond in the New Hampshire Superior Court in the amount of $131,215.12. Suit was based upon Diamond's default on two notes.

Earlier, on January 20, 1999, as the parties were attempting to resolve their dispute, before entry of judgment, Diamond gave Premier Capital an unsigned affidavit purporting to list all of his assets and liabilities. (Diamond also resubmitted that affidavit to Premier Capital on June 1, 2000.) The affidavit failed to disclose: (1) Diamond's ownership interest in two closely-held corporations, Diafil, Inc., and Real Estate Settlement Services, Inc. ("Real Estate Settlement"); (2) a Prudential life insurance policy with a cash value of $11,900; and (3) an account with Solomon Smith Barney.

On July 11, 2000, Premier Capital sought to attach, through trustee process, all of Diamond's assets, of which it was aware. Premier Capital succeeded in attaching Diamond's accounts at First Savings of New Hampshire, Citizens Bank, and Morgan Stanley, Dean Witter. It did not, however, seek to attach the

3

account at Solomon Smith Barney or the Prudential life insurance policy because it was unaware of the existence of those assets. Between July 18 and July 26, 2000, Diamond liquidated those two assets, depositing the proceeds in a trust account maintained by Attorney Terrie Harman. At the same time, Attorney Harmon provided Premier Capital with information about Diamond's finances, including the transfer of funds into her trust account. From that trust account, Attorney Harman collected legal fees and paid the Internal Revenue Service $15,000 against a $75,000 deficiency owed by Diamond.

On September 27, 2000, Diamond was divorced. In his divorce proceeding, Diamond disclosed his interests in both Real Estate Settlement and Diafil, and the permanent stipulation incorporated into his divorce decree awarded those interests to his wife.

On October 6, 2000, Diamond filed for bankruptcy protection. In his petition, he indicated that his interests in Real Estate Settlement and Diafil had been transferred to his wife on September 27, but the final transfer of stock certificates did not actually occur until some time after Diamond filed his

4

petition. Diamond's petition also failed to disclose approximately $35,000 in commissions to be paid to him on real estate transactions in which he acted as a broker.

Based upon the foregoing, Premier Capital filed suit in six counts, asking the bankruptcy court to deny Diamond a discharge, on grounds that he concealed and transferred assets and gave false oaths. Specifically, Premier Capital asserted that Diamond unlawfully concealed his interests in Real Estate Settlement and Diafil (Count I), the Solomon Smith Barney account and the Prudential insurance policy (Count II), and the commissions he was to collect on several real estate transactions (Count IV), and that he unlawfully transferred funds from the Solomon Smith Barney account and proceeds from the Prudential policy to Attorney Harman's trust account (Count III). Premier Capital also asserted that Diamond gave false oaths by failing to list his pending real estate commissions (Count V) and his interests in Real Estate Settlement and Diafil (Count VI) in his bankruptcy petition.

In a memorandum opinion dated March 27, 2003, the bankruptcy court ruled against Premier Capital on all counts.

## Discussion

On appeal, Premier Capital argues that the bankruptcy court erred by ruling that: (1) Diamond's transfer of funds to his attorney did not violate 11 U.S.C. § 727(a)(2); (2) Diamond did not intentionally conceal his interests in Diafil and Real Estate Settlement in violation of § 727(a)(2); and (3) Diamond's failure to list pending real estate commissions did not violate § 727(a)(4). Diamond disagrees, categorically.

I.   Relevant Law

The discharge provisions of the bankruptcy code provide, in pertinent part:

> The court shall grant the debtor a discharge, unless–
>
> . . .
>
> **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

6

**(A)** property of the debtor, within one year before the date of the filing of the petition;

. . .

**(4)** the debtor knowingly and fraudulently, in or in connection with the case-

**(A)** made a false oath or account . . .

11 U.S.C. 727(a). "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy. . . ." Palmacci, 121 F.3d at 786 (quoting Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 9 (1st Cir. 1994)). "The statutory requirements for a discharge are 'construed liberally in favor of the debtor' and '[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'" Palmacci, 121 F.3d at 786 (quoting Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987)).

II. Transfer of Funds to Attorney Harman

In Count III, Premier Capital asserted that Diamond should be denied a discharge because he transferred funds into Attorney Harman's trust account with the intent to hinder, delay, or defraud a creditor, i.e., Premier Capital. The bankruptcy court

7

ruled in Diamond's favor, on grounds that Diamond: (1) disclosed those transfers to Premier Capital, as they were being made, in a letter dated July 21, 2000; and (2) maintained control over the funds in Attorney Harman's trust account. In the view of the bankruptcy court, "[t]he mere fact that these transfers were immediately disclosed to [Premier Capital] negates any evidence of intent to hinder, delay or defraud the Plaintiff."

As set forth above, a debtor may be denied a discharge if he or she has, "with intent to hinder, delay, or defraud a creditor," transferred "property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Here, it is undisputed that Diamond deposited money into Attorney Harman's trust account less than one year before the date on which he filed his bankruptcy petition.[1] The

_____

[1] The bankruptcy court appears to agree with Premier Capital that Diamond's deposit of funds into Attorney Harman's trust account was a "transfer" within the meaning of 11 U.S.C. § 727(a)(2), and Diamond himself does not challenge that conclusion, other than to note that he maintained control over the funds after the transfers. However, it is not at all clear that Diamond's deposits into Attorney Harman's trust account were transfers, as that term is used in the relevant statute. Typical fraudulent transfer cases involve debtors who sell assets for far less than their value, in order to impoverish themselves, or debtors who transfer assets into trusts while secretly maintaining full control over them. See R.I. Depositors Econ.

8

only question, then, is whether the bankruptcy court correctly determined that Diamond lacked the requisite intent to hinder, delay, or defraud Premier Capital.

"Whether the debtor had the requisite wrongful intent is a question of fact." Farm Credit Bank v. Hodgson (In re Hodgson), 167 B.R. 945, 952 (D. Kan. 1994) (citing Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993)). Thus, the bankruptcy court's determination that Diamond lacked the necessary wrongful intent may be reversed only if it was clearly erroneous. See Palmacci, 121 F.3d at 785 (citations omitted).

The bankruptcy court did not commit clear error by finding that Diamond lacked the intent necessary to support a claim that he transferred money into Attorney Harman's trust account in

Protection Corp. v. Hayes (In re Hayes), 229 B.R. 253, 259-60 (B.A.P. 1st Cir. 1999). Here, by contrast, Diamond did not secretly maintain control over the assets in question but did so out in the open, nor did he place those assets beyond the reach of his creditors. Thus, it is difficult to see how Diamond's deposit of funds into Attorney Harman's trust account even qualifies as a transfer within the meaning of the bankruptcy code. But, because the bankruptcy court's decision can be affirmed on the issue of intent, it is not necessary to decide whether Diamond's act qualified as a transfer of assets in the first instance.

order to hinder, delay, or defraud Premier Capital. As the bankruptcy court points out in its memorandum opinion, there was nothing in the least bit covert about Diamond's transfer of funds. Moreover, Diamond's action did not "place assets beyond the reach of creditors." In re Hayes, 229 B.R. at 259 (citations omitted). Accordingly, the bankruptcy court's decision regarding the transfer of funds into Attorney Harman's trust account is affirmed.

III. Concealment of Corporate Interests

In Count I, Premier Capital asserted that Diamond should be denied a discharge because, with the intent to hinder, delay, or defraud, he concealed his interests in Diafil and Real Estate Settlement from a creditor.[2] The bankruptcy court ruled in favor of Diamond on Count I on grounds that while Diamond failed to inform Premier Capital of his interests in Diafil and Real Estate Settlement, he lacked "the requisite intent to hinder, delay or

_____

[2] Premier Capital also asserted, in Count VI, that Diamond should be denied a discharge because he falsely stated, in his petition, that he had transferred his interest in Real Estate Settlement on September 27, 2000. Premier Capital does not appeal the bankruptcy court's decision in Diamond's favor on Count VI, which was based upon the court's determination that Diamond did not knowingly and fraudulently make a false oath.

10

defraud." In reaching that decision, the bankruptcy court credited, among other things, Diamond's testimony that he did not list those interests because he believed them to have no value to a third party. The court also noted that Diamond did, in fact, disclose those interests to Premier Capital in the July 21, 2000, letter.

As set forth above, a debtor may be denied a discharge if he or she has, "with intent to hinder, delay, or defraud a creditor," concealed "property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Here, the determinative question is whether Diamond had the requisite intent to hinder, delay, or defraud Premier Capital on June 1, 2000, when he resubmitted the January 20, 1999, affidavit.

The bankruptcy court did not commit clear error by finding that Diamond lacked the intent necessary to support a claim that he failed to disclose his interests in Diafil and Real Estate Settlement in order to hinder, delay, or defraud Premier Capital. Not only did the bankruptcy court find Diamond to be a credible

11

witness, it also found Diamond's explanation of his omission to be logical.  Indeed, it was not at all unreasonable for Diamond to consider his ownership interests in two closely held corporations to have negligible value to a third party, because those corporations had little in the way of liquid assets.  Accordingly, the bankruptcy court's decision regarding the alleged concealment of Diamond's corporate interests is affirmed.

IV.  Failure to List Real Estate Commissions

In Count V, Premier Capital asserted that Diamond should be denied a discharge because he gave a false oath by failing to list, in his petition, the real estate commissions he was due to collect.[3]  The bankruptcy court ruled in favor of Diamond on Count V, on grounds that Diamond did not make a knowingly fraudulent statement but, rather, omitted his commissions from the list of assets in his petition based upon a credible claim that he did not know what an "executory contract" was and a

_____

[3] Premier Capital also asserted, in Count IV, that Diamond should be denied a discharge because, with intent to hinder, delay, or defraud the trustee, he concealed from the trustee the real estate commissions that he was due to collect.  Premier Capital does not appeal the bankruptcy court's decision in Diamond's favor on Count IV, which was based upon the bankruptcy court's determination that Diamond lacked the requisite intent to hinder, delay, or defraud the trustee.

reasonable belief that, at the time of the petition, he had not yet earned those commissions.

As set forth above, a debtor may be denied a discharge if he or she has "knowingly and fraudulently . . . made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  "[T]he existence of false or inaccurate statements is not, in and of itself, sufficient cause to deny a debtor's discharge unless it is shown that these were knowingly and fraudulently made."  Santana Olmo v. Quiñones Rivera (In re Quiñones Rivera), 184 B.R. 178, 185 (D.P.R. 1995) (citing In re Burgess, 955 F.2d at 136; In re Tully, 818 F.2d at 110)).  "Because a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate."  In re Burgess, 955 F.2d at 137 (quoting Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir. 1987)).

Here, in light of the deferential standard of review, there is no basis for reversing the bankruptcy court's determination that Diamond lacked the requisite fraudulent intent when he

13

failed to list the real estate commissions he was due to be paid. As the bankruptcy court points out, there is debate within the legal community over when a real estate commission is actually earned. Thus, it was entirely reasonable for Diamond to believe that he had not yet earned the commissions he did not list. Consequently, it was not clear error for the bankruptcy court to conclude that Diamond's omission was not motivated by an intent to defraud. Accordingly, the bankruptcy court's decision regarding Diamond's failure to list his real estate commissions is affirmed.

## Conclusion

For the reasons given, the decision of the bankruptcy court is affirmed in all respects. The Clerk of Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

October 24, 2003

14

```
cc:  Randall L. Pratt, Esq.
     Terrie L. Harman, Esq.
     James F. Molleur, Esq.
     George Vannah
     Timothy P. Smith
     Geraldine B. Karonis, Esq.
```