Michael J. SIMMONS, Debtor.

William K. Harrington, United States Trustee, Plaintiff–Appellee,

v.

Michael J. Simmons, Defendant–Appellant.

BAP No. MW 14–048.
Bankruptcy No. 10–45664–MSH.
Adversary No. 12–04035–MSH.

United States Bankruptcy Appellate Panel of the First Circuit.

March 3, 2015.

James P. Ehrhard, Esq., Worcester, MA, on brief for Defendant–Appellant.

Richard T. King, Esq., Worcester, MA, on brief for Plaintiff–Appellee.

Before DEASY, KORNREICH, and FINKLE, United States Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

On the request of the United States Trustee ("UST"), the bankruptcy court entered summary judgment denying the discharge of Michael J. Simmons because of his failure to keep business records and his failure to explain satisfactorily the loss of assets. On appeal Simmons asserts he preserved his right to trial by demonstrating a genuine dispute of material fact with evidence justifying his paltry record keeping and explaining the loss of assets. We disagree and **AFFIRM** the summary judgment.

## BACKGROUND

Simmons is a high school graduate with two years of college education. He quit

college to help an individual named Kai Kunz start a real estate business. For some period of time they lived together. In 2006, Simmons began investing in real estate in his own name. Kunz helped him find properties and arrange financing. By 2007, Simmons had acquired 27 residential rental properties in Fitchburg, Gardner, Haverhill, Leominster, Whitinsville, and Worcester, Massachusetts.

Simmons hired managers to collect the rents and manage the properties. He received some rents in cash and some in checks. Most rents were deposited into accounts maintained by Simmons or the managers. Simmons did not segregate the rents or maintain separate accounts for each tenant. Some of the rents were retained by managers to pay for repairs. The record does not disclose the identity of all of the property managers, the receipts due or received by Simmons, or the location of and balance in any bank account maintained by him with respect to these properties.

Simmons commenced this chapter 7 case in November 2010. His schedules and statement of affairs revealed an interest in only five of the 27 properties and his intention to surrender those five. He was unemployed and dependent upon family for lodging and support. He reported no income from 2008 to 2010, little cash on hand, no meaningful balance in any bank account, and no assets of value to the bankruptcy estate.

Simmons listed unsecured claims in excess of $4,000,000.00, most of which arose from mortgage deficiencies, and secured claims of $1,540,961.91 on the five properties.

The UST asked Simmons to provide copies of documents relating to his financial condition and business transactions, including bank account statements, canceled checks, and state and federal income tax returns. Among other things, Simmons produced copies of his federal tax returns for the years 2007, 2008, and 2009. Each return for those years included a schedule of supplemental income and loss from real estate showing income from only one property.

The UST conducted an examination of Simmons pursuant to Rule 2004. *See* Fed. R. Bankr.P.2004. At that examination, Simmons could not recall any details regarding the income and expenses of his real estate business. Thereafter, the UST repeatedly asked Simmons to turn over rent rolls or ledgers evidencing the amount of rents collected. Simmons produced none.

In April 2012, the UST commenced an adversary proceeding objecting to Simmons' discharge. The complaint contained three counts: Count I under § 727(a)(3) for failure to keep or preserve records; Count II under § 727(a)(4) for giving a false oath or account; and Count III under § 727(a)(5) for failure to explain satisfactorily the loss of assets.[1] Simmons raised several affirmative defenses including one stating the UST's claims were barred by the acts of third parties.

The UST asked for summary judgment on Counts I and III. He supported his motion with the affidavits of his counsel and a paralegal specialist, and a statement of material facts showing Simmons had failed to keep adequate books and records and failed to explain satisfactorily the loss of rental income. Simmons did not contest the UST's assertions of fact in any meaningful way. Instead he argued that under the circumstances his record keeping defi-

---

**1.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

ciencies were justified and the losses were explained satisfactorily. In support of these arguments Simmons provided a barebones affidavit stating: he had turned over all the records he had or could obtain reasonably; he did not receive most of the rents; he did not handle the management of any properties; and he had been a "dupe" to Kunz and his associates. Between the filing of the motion and the hearing, Simmons continued to deliver multifarious documents to the UST, including a large trash barrel containing a hodgepodge of papers.

After the hearing, the UST supplemented the record by adding the affidavit of his records clerk, updated affidavits of his counsel and the paralegal specialist, and the transcript of Simmons' testimony at the Rule 2004 examination. The clerk's affidavit described the records delivered by Simmons as including a few rent checks, merchandise receipts, repair bills, court documents, handwritten notes, and deposit slips. Simmons' testimony showed he put the properties in his own name at the urging of Kunz; he attended all of the closings and executed all of the mortgages; and he allowed others to manage his properties.

Concluding that Simmons had failed to keep records from which his financial condition or business transactions might be ascertained, and that he did not explain satisfactorily the loss of rental income, the bankruptcy court entered summary judgment in favor of the UST on Counts I and III. Regarding Simmons' defenses of justification and satisfactory explanation, the bankruptcy court stated:

It is only in the exceptional circumstance that I would deny a party his day in court to establish justification for his conduct, especially in a fact intensive inquiry involving discharge denial. But this is such a circumstance. I am not basing my decision on Mr. Simmons credibility or lack thereof. Taking Mr. Simmons at his word that he gave the UST all the records he had or could get his hands on and that he was merely a patsy for Mr. Kunz, his failure to have kept or maintained records that would establish a clear picture of his financial status prior to and on the date of his bankruptcy filing remains unjustifiable under the circumstances.

Mr. Simmons is a high school graduate with some level of college education. He dropped out of college for the very purpose of learning the real estate business from Mr. Kunz, with whom he worked·for many years. During the period prior to his bankruptcy Mr. Simmons owned at least 27 pieces of real estate, borrowing millions of dollars in connection with these properties. If Mr. Simmons was so foolish or naive as to think that because he was acting as a shill for Mr. Kunz he would be excused from the basic responsibilities imposed on any owner of real estate, he must unfortunately be required to suffer the consequences of his poor judgment. Mr. Simmons' choice to act as Charlie McCarthy to Mr. Kunz's Edgar Bergen no more justifies his inability to account for the operation of the real estate he owned and the losses he claims to have incurred than would it excuse his failure to comply with the municipal health and safety codes imposed upon him as a landlord.

On appeal, Simmons asserts he had preserved his right to trial by demonstrating a genuine dispute of material fact regarding his claim of victimization by Kunz.

### *JURISDICTION*

▮ We may hear appeals from a final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(a)(1). A judgment under

§ 727 is a final order when all outstanding issues are resolved. *See Lussier v. Sullivan (In re Sullivan),* 455 B.R. 829, 834 (1st Cir. BAP 2011) (citations omitted). We accept finality despite the absence of an express ruling on Count II for at least three reasons. First, the UST removed any ambiguity regarding the continuing existence of Count II when he withdrew or dismissed it at oral argument. Second, it is apparent from the memorandum of decision that the bankruptcy judge intended the summary judgment to be a final adjudication on the entire objection to discharge. Third, there is certainty that a ruling in Simmons' favor on Count II would not mitigate the denial of his discharge under Counts I and III. Accordingly, we conclude this judgment is final and appealable.

### STANDARD OF REVIEW

■ We review a bankruptcy court's grant of summary judgment de novo. *Ocasio–Hernández v. Fortuño–Burset,* 777 F.3d 1, 3–4 (1st Cir.2015) (citing *Velázquez–Pérez v. Developers Diversified Realty Corp.,* 753 F.3d 265, 270 (1st Cir. 2014)).

### DISCUSSION

Summary judgment should be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[2] The record is clear. The UST met this burden under both § 727(a)(3) and (a)(5).

### I. Section 727(a)(3)

■ A debtor may be denied a discharge under § 727(a)(3) if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). "The purpose of § 727(a)(3) is to give creditors, the trustee and the bankruptcy court complete and accurate information concerning the debtor's affairs and to ensure that dependable information is provided so that the debtor's financial history may be traced." *Canha v. Gubellini (In re Gubellini),* No. 09–016, 2009 WL 8466789, at *4 (1st Cir. B.A.P. Nov. 23, 2009) (footnote omitted) (citing *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992)). The standard for disclosure of records for purposes of § 727(a)(3) is one of "reasonableness in the particular circumstances." *Razzaboni v. Schifano (In re Schifano),* 378 F.3d 60, 68 (1st Cir.2004) (internal quotations and citations omitted). "[A]n impeccable system of bookkeeping" is not required; however, "the records must sufficiently identify the transactions [so] that intelligent inquiry can be made of them." *Id.* at 69 (internal quotations and citations omitted). The inquiry into the reasonableness of records may include several relevant factors such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Id.* at 70 n. 3 (internal quotations and citations omitted).

■ Simmons does not contest his failure to keep adequate business records; nor does he argue his financial condition or business transactions might be ascertained from the documents he turned over to the

---

**2.** Fed.R.Civ.P. 56 is applicable in bankruptcy proceedings through Fed. R. Bankr.P. 7056.

UST. He argues instead that his meager production was justified under the circumstances of the case. The materials he relied upon to support his position included: the affirmative defense that the UST's claims are barred by the acts of third parties; the bare statements in his affidavit that he did not receive rents, did not manage the properties, and had been a dupe to Kunz and his associates; his testimony at his Rule 2004 examination stating that he put the properties in his own name at the urging of Kunz; and counsel's unsupported argument that Simmons was a rube. None of these assertions rises to the level of presenting a genuine dispute under Fed.R.Civ.P. 56(c)(1)(A). The affirmative defense is of no consequence, *see* *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (party opposing summary judgment cannot rely on pleadings to show genuine issue of material fact), and the other assertions are simply suggestions of justification. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Had Simmons provided evidence that Kunz or others actually prevented him from keeping records, that his managers had refused to supply him with timely records, or that he was less than competent despite his education and experience, he might have established a genuine dispute for trial. Because Simmons did not provide such evidence, summary judgment was proper. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.…" *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

## II. Section 727(a)(5)

Section 727(a)(5) provides that a debtor who fails to "explain satisfactorily … any loss of assets or deficiency of assets" will lose his discharge following judgment on a proper complaint. 11 U.S.C. § 727(a)(5). Once the plaintiff has shown the loss or deficiency of assets, it falls upon the debtor to provide a satisfactory explanation. *Aoki v. Atto Corp. (In re Aoki),* 323 B.R. 803, 817 (1st Cir. BAP 2005) (citation omitted). "Section 727(a)(5) is broadly drawn and gives the bankruptcy court broad power to decline to grant a discharge in bankruptcy when the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Id.* (citing *In re D'Agnese,* 86 F.3d 732, 734 (7th Cir.1996); *First Fed. Life Ins. Co. v. Martin (In re Martin),* 698 F.2d 883, 886 (7th Cir.1983)). "What constitutes a 'satisfactory' explanation for § 727(a)(5) purposes is left to the discretion of the court." *Id.* (citing *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966)). To be successful, the explanation must be corroborated and the corroboration must be sufficient "to eliminate the need for any speculation." *Id.* (citations omitted).

The UST met his burden of showing the loss of rental income by establishing that Simmons had reported little or no income during the period of his ownership. Thus it became Simmons' burden to overcome summary judgment by providing a genuine dispute on the issue of his explanation for the lost income. *See* Fed. R.Civ.P. 56(c)(1)(A). To accomplish this, he relied upon his own uncorroborated statements that others were responsible for his predicament. This account does not present a genuine dispute for trial because, without speculation, we are un-

able to discern a satisfactory explanation for the lost rental income.

### CONCLUSION

The bankruptcy court rejected Simmons' defenses to Counts I and III for the reasons given in the memorandum of decision. We agree with the result because Simmons failed to offer adequate materials justifying his failure to keep and preserve records or explain satisfactorily his loss of rental income. Summary judgment was proper because no genuine dispute of material fact was presented on these issues. Based on the foregoing, we **AFFIRM**.