# United States Court of Appeals
## For the First Circuit

No. 15-9005

IN RE MICHAEL J. SIMMONS,

Debtor.

_____

WILLIAM K. HARRINGTON,

Trustee, Appellee,

v.

MICHAEL J. SIMMONS,

Debtor, Appellant.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

James P. Ehrhard for appellant.
Sumi K. Sakata, Trial Attorney, with whom Ramona D. Elliott, Deputy Director/General Counsel, Executive Office for United States Trustees, U.S. Department of Justice, P. Matthew Sutko, Associate General Counsel, William K. Harrington, United States Trustee, and Richard T. King, Assistant United States Trustee, were on brief, for appellee.

January 20, 2016

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA**, **Circuit Judge**.  In exchange for a fresh start, a debtor must paint a basic picture of his financial condition and satisfactorily explain the disposition of his assets during the period leading up to the filing of his bankruptcy petition.  Here, the bankruptcy court pronounced the debtor's lack of documentation "shocking and disturbing" and found that he had not satisfactorily explained the disposition of his assets.  Consequently, the court denied the debtor a discharge.  The Bankruptcy Appellate Panel for the First Circuit (the BAP) upheld this decision.  See Harrington v. Simmons (In re Simmons), 525 B.R. 543, 549 (B.A.P. 1st Cir. 2015).  After careful consideration, we affirm.

## I.  BACKGROUND

In chapter 7 liquidation proceedings, an individual debtor may receive a discharge that absolves him from virtually all debts that arose before the bankruptcy case commenced.[1]  See 11 U.S.C. § 727(a).  Nevertheless, certain behavior may preclude the granting of a discharge.  Two types of preclusive behavior are relevant here.  For one thing, the bankruptcy court may deny a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained,

---

[1] We say "virtually" because certain debts, excepted by statute, are non-dischargeable.  See 11 U.S.C. § 523(a).  This case does not require us to delve into these exceptions.

unless such act or failure to act was justified under all of the circumstances of the case . . . .

Id. § 727(a)(3). For another thing, the bankruptcy court may deny a discharge if:

the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

Id. § 727(a)(5).

In chapter 7 proceedings, the United States Trustee (the Trustee) may be heard on any issue. See id. § 307; see also In re Youk-See, 450 B.R. 312, 323 (Bankr. D. Mass. 2011) (explaining that the Trustee "protect[s] the integrity of the bankruptcy system"). The Trustee is specifically authorized to object to the granting of a discharge in a chapter 7 case. See 11 U.S.C. § 727(c)(1).

Against this statutory backdrop, we proceed to the case at hand. Michael J. Simmons (the debtor) became involved in the real estate business around 1997. He left college before completing his degree to work in the real estate business with an individual named Kai Kunz. The debtor initially helped fund Kunz's own real estate investments but, by around 2006, he was identifying properties to purchase for his own account, obtaining financing, and hiring property managers. By 2007, he had acquired 27 rental properties in communities throughout Massachusetts.

For aught that appears, the debtor took title to the properties in his own name and signed all the pertinent loan documents. He hired managers to oversee the properties and collect rents. At least some of the rents were deposited into accounts maintained by the debtor or his managers, but the accounts were never segregated by tenant. Overall, the properties generated rents that appear to have been the debtor's sole source of income.

On November 15, 2010, the debtor filed a chapter 7 bankruptcy petition, seeking to discharge, inter alia, nearly $3,500,000 in unsecured debt. In due course, the debtor filed his schedules of assets and liabilities and his statement of financial affairs. These filings revealed that the debtor by then retained an interest in only five properties (all of which he intended to surrender to lenders). The vast majority of the debtor's unsecured debt was described as deficiencies on various mortgages or deficiencies arising after the foreclosure of multiple properties. The filings also showed that the debtor was unemployed, that he reportedly had no income from 2008 to 2010, and that he depended on family members for support. His bank account balances were close to zero, and he disclaimed possession of any other assets of value.

The Trustee requested that the debtor furnish further documentation relating to his real estate holdings and his overall financial condition (including bank account statements, canceled

checks, and state and federal income tax returns). In response, the debtor produced copies of his federal tax returns for the years 2007, 2008, and 2009. Each return reflected income and loss from only one property. No information pertaining to other rental properties was produced.

When the Trustee later deposed the debtor, he discovered that the debtor had owned a total of 27 separate rental properties during the years immediately preceding the filing of his bankruptcy petition. The debtor professed an inability to recall any meaningful detail regarding the disposition of his rental income. He testified that 22 of the properties had been transferred through short sales or foreclosures prior to his filing for bankruptcy, but he did not provide any details about the ultimate disposition of these properties.

Following the deposition, the Trustee again demanded that the debtor produce rent rolls and ledgers showing how much rent he had collected, together with documentation explaining where the collected rents and his other assets had gone. The debtor provided no responsive documents, and several more document requests also went begging.

Frustrated by this apparent stonewalling, the Trustee instituted an adversary proceeding against the debtor, seeking to deny him a discharge. In due season, the Trustee moved for summary judgment. At that point, the debtor surrendered some additional

records — but this document dump was disorganized and omitted the most critical information sought by the Trustee. No rent rolls, ledgers, bank statements, or other records showing itemized accounts of either rental proceeds or real estate transactions were forthcoming. Withal, the debtor opposed summary judgment arguing that he had given the Trustee all the documents that he either possessed or could reasonably obtain.

The Trustee pressed his summary judgment motion. The bankruptcy court granted the Trustee's motion and denied a discharge on two grounds: it concluded that the debtor had violated both 11 U.S.C. § 727(a)(3) and 11 U.S.C. § 727(a)(5). When the debtor appealed, the BAP upheld the denial of the discharge on both grounds. See In re Simmons, 525 B.R. at 549. This timely second-tier appeal ensued.

## II. ANALYSIS

A two-tiered framework exists for appellate review in bankruptcy cases:

> Under this framework, litigants in the ordinary case must first appeal to the district court (or, in some circuits, a bankruptcy appellate panel). See 28 U.S.C. § 158(a)-(b); Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.), 132 F.3d 104, 107 (1st Cir. 1997). The courts of appeals are then available as a second tier of appellate review. See 28 U.S.C. § 158(d)(1); Stornawaye Fin. Corp. v. Hill (In re Hill), 562 F.3d 29, 32 (1st Cir. 2009).

City Sanit., LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011). "We accord no

- 7 -

special deference to determinations made by the first-tier appellate tribunal but, rather, train the lens of our inquiry directly on the bankruptcy court's decision." Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry., Ltd.), 799 F.3d 1, 5 (1st Cir. 2015). We afford de novo review to that decision. See Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 66 (1st Cir. 2004).

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 as the mechanism for adjudicating summary judgment motions. The moving party (here, the Trustee) must show that "there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Within this rubric, an issue is "genuine" "if the record permits a rational factfinder to resolve that issue in favor of either party." Jarvis v. Vill. Gun Shop, Inc., 805 F.3d 1, 7 (1st Cir. 2015). A fact is "material" "if its existence or nonexistence has the potential to change the outcome of the suit." Id. (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). Establishing a genuine issue of material fact requires evidence that is "significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). "[C]onclusory allegations, improbable inferences or unsupported speculation" will not suffice. In re Schifano, 378 F.3d at 66.

- 8 -

With respect to issues on which the non-movant would bear the burden of proof at trial, the non-movant (here, the debtor) must adduce sufficient evidence to permit the trier of fact to resolve that issue in his favor. See Serrano-Isern, 605 F.3d at 5. If the non-movant fails to make the required showing on such an issue and the issue is a dispositive one, summary judgment is appropriate. See id.

We turn now from the general to the specific. In granting summary judgment, the bankruptcy court determined that the undisputed facts established two separate and independently sufficient grounds for denying the debtor a discharge. We examine each ground separately, mindful that the bankruptcy court's judgment should be upheld so long as either ground is valid. See Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 177 (5th Cir. 1992).

## A. 11 U.S.C. § 727(a)(3).

We start with 11 U.S.C. § 727(a)(3). Every debtor has a duty to maintain books and records accurately memorializing his business affairs. See Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999). Section 727(a)(3) operates in furtherance of this duty: by virtue of the statute, a bankruptcy court may deny a discharge to a debtor who has failed to "keep or preserve" adequate business records "from which the debtor's financial condition or business transactions might be

ascertained."  Congress's evident purpose in enacting section 727(a)(3) was to give interested parties and the court a reasonably complete picture of the debtor's financial condition during the period prior to bankruptcy.  See Tucker v. Devine (In re Devine), 11 B.R. 487, 488 (Bankr. D. Mass. 1981).

A party who desires to invoke section 727(a)(3) must make a prima facie showing that the debtor has failed to maintain adequate records.  See CM Temp. Servs., Inc. v. Bailey (In re Bailey), 375 B.R. 410, 415 (Bankr. S.D. Ohio 2007).  Record-keeping need not be precise to the point of pedantry: records can be adequate without being textbook models.  The operative standard is functional: a debtor's records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." In re Schifano, 378 F.3d at 69 (quoting Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992)) (alteration in original).  The standard is an objective one.  A debtor's records may be judged deficient under section 727(a)(3) even if the debtor did not intend to conceal financial information, see State Bank of India v. Sethi (In re Sethi), 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000), or harbored an honest belief that he did not need to keep records, see Miller v. Pulos (In re Pulos), 168 B.R. 682, 692 (Bankr. D. Minn. 1994).

Here, the debtor kept virtually no records in connection with his 27 income-producing properties.  The gaps in documentation

are as pervasive as they are disturbing.  There is a total absence of information regarding the amount of rent the debtor received each month; a dearth of bank statements tracing the flow of rent proceeds; and a general absence of documentation regarding income earned from or expenses paid in connection with any of the debtor's properties.  There is a similar lack of documentation concerning the acquisition, financing, and disposition of the properties.  What records there are do not permit intelligent inquiry into the debtor's finances.  Indeed, it is fair to characterize the debtor's real estate dealings as a black hole.

Faced with this black hole, the debtor does not gainsay his failure to maintain adequate business records.  Nor does he assert that he supplied sufficient documentation from which the Trustee might have ascertained his financial condition.  Rather, his sole argument is that his failure to keep and preserve records was justified by extenuating circumstances.  This is a justification defense, and we treat it as such.

To be sure, section 727(a)(3) explicitly allows for a justification defense; and there are some situations in which courts have found a debtor's failure to keep and preserve records justified.  See, e.g., Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1298-1300 (9th Cir. 1994) (upholding finding of justification when debtor-wife reasonably relied on husband to keep records); Floret, L.L.C. v. Sendecky (In re Sendecky), 283 B.R. 760, 764 (B.A.P. 8th

- 11 -

Cir. 2002) (upholding finding of justification for incomplete records because debtor was poorly educated, unsophisticated, and had little business experience); Hunter v. Kinney (In re Kinney), 33 B.R. 594, 596-97 (Bankr. N.D. Ohio 1983) (finding justification where debtor's records were "irretrievably lost" through no fault of his own). But the debtor has the burden of proving justification, see Meridian Bank, 958 F.2d at 1234, and his ability to prevail on such a defense turns on whether his asserted justification is objectively reasonable, see In re Schifano, 378 F.3d at 68. The standard is that of a reasonably prudent person in the same or similar circumstances. See Meridian Bank, 958 F.2d at 1231.

Myriad factors may inform this inquiry, including the debtor's education, experience, and sophistication; the volume and complexity of the debtor's business; and whatever other circumstances are made relevant by the idiosyncrasies of the case. See id. at 1231.

In this instance, the bankruptcy court concluded that the relevant factors militated strongly against a finding that the debtor had acted as a reasonably prudent real estate owner. It noted that the debtor was an experienced investor who had some college education. He had left college for the specific purpose of working in the real estate business with Kunz and had branched out from there. He had been dealing in real estate for several

years.  The volume of his business was substantial: he had amassed a total of 27 properties.  Importantly, he had borrowed millions of dollars to finance the acquisition of properties.  And at any rate, the debtor's status as a taxpayer and borrower presumably compelled him to keep such records.

Given these historical facts, we think it nose-on-the-face plain that any reasonable property owner would have kept and preserved documentation detailing income, expenses, and property dispositions.  The debtor's only asserted justification for failing to keep even the most rudimentary financial records is that he "was nothing more than a dupe for managers (such as Kai Kunz)" and "he was manipulated and victimized by those who created and controlled the documentation."  But these bald assertions (proffered without any specifics) are not enough to relieve the debtor of responsibility for his abject record-keeping.[2]  After all, "factually unsupported claims [and] defenses" are insufficient to withstand summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); see Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 12 (1st Cir. 2010) (explaining that

_____

[2] At oral argument in this court, the debtor suggested that a trial would have fleshed out these assertions.  But the record offers no indication that the debtor made any effort to undertake discovery.  Nor did he request that the bankruptcy court postpone adjudication of the summary judgment motion until he could obtain more information.  See Fed. R. Civ. P. 56(d).  The case law makes clear that such inaction has consequences.  See Nieves-Romero v. United States, 715 F.3d 375, 382 (1st Cir. 2013).

- 13 -

"general allegations" lacking specificity cannot survive summary judgment).

The debtor's unsupported claim that he was a "dupe" does not save the day. A debtor cannot shirk his statutory duty under section 727(a)(3) by the simple expedient of claiming conclusorily that he was merely a pawn for someone else. At least in the absence of proof of special circumstances (not present here), such a claim is not an objectively reasonable justification for a commercial property owner's failure to keep and maintain any semblance of adequate records.[3]

That ends this aspect of the matter. We hold, without serious question, that even when the facts of record are taken in the light most hospitable to the debtor, they do not form a predicate sufficient to allow him to carry his burden of proving justification. The debtor argues that such a holding amounts to a rule of strict liability for a failure to keep and preserve records. That argument is misguided. We hold only that a discharge may be denied where, as here, the debtor fails, <u>without any objectively reasonable justification</u>, to keep and preserve records.

---

[3] In all events, the debtor's claim that he was a "dupe" is open to serious question. For example, he was able to name each of the 27 properties (citing street addresses and facts concerning mortgage financing).

- 14 -

To say more would be to paint the lily. It follows from what we already have said that the bankruptcy court's entry of summary judgment and its concomitant denial of a discharge based on 11 U.S.C. § 727(a)(3) was appropriate.

## B. 11 U.S.C. § 727(a)(5).

The second ground that underlies the bankruptcy court's decision is equally firm. Section 727(a)(5) authorizes the bankruptcy court to deny a discharge when a debtor has experienced a loss of assets or some other deficiency that the debtor cannot satisfactorily explain. See Aoki v. Atto Corp. (In re Aoki), 323 B.R. 803, 817 (B.A.P. 1st Cir. 2005). A burden-shifting framework applies: if the party seeking to thwart a discharge shows that the debtor has not accounted for previously owned assets or previously earned income, the burden shifts to the debtor to explain the deficiency. See id. The debtor's explanation "must be supported by at least some corroboration," and it "must be sufficient to eliminate the need for any speculation as to what happened to all of the assets." Id. Something more than vague allusions is required. See id.

To invoke section 727(a)(5), it is unnecessary to show that the debtor has acted fraudulently or in bad faith. See id. Rather, the issue turns on whether a satisfactory explanation is — or is not — forthcoming.

- 15 -

In this case, the Trustee plainly carried his initial burden. First, he showed that numerous pieces of property, once owned by the debtor, are no longer included in his schedule of assets. Second, he showed that the rents from those properties had not been accounted for. The record demonstrates that the debtor owned 27 income-producing properties; that he received rent from at least some of these properties in the two years leading up to his bankruptcy filing; and that he could not account for either the disposition of the 22 properties that he no longer owns or his rental income.

Given this prima facie showing, the burden shifted to the debtor to explain his loss of assets. The bankruptcy court found that the debtor had wholly failed to account for either the disposition of the properties that he formerly had owned or for the rental income that his properties had generated. Moreover, the court found that the debtor had not offered any coherent explanation for the dissipation of his assets. The hodge-podge of records that the debtor ultimately provided were not only unlabeled and disorganized but also proved inadequate to illuminate any of the relevant issues.

The bankruptcy court's findings are unimpugnable. The debtor has never submitted anything remotely resembling a satisfactory explanation for the loss of millions of dollars in assets.

- 16 -

In an effort to paper over the lack of a satisfactory explanation, the debtor once again asserts that he was a mere "dupe" who produced all the information in his possession. This assertion provides no explanation at all, much less one that would satisfy the strictures of section 727(a)(5). We — like the courts below — are left entirely in the dark as to what happened to the debtor's considerable assets. We hold, therefore, that the bankruptcy court did not err in granting the Trustee's motion for summary judgment and thus denying the debtor a discharge under 11 U.S.C. § 727(a)(5).

## III. CONCLUSION

We need go no further. A debtor need not keep and preserve meticulously detailed records in order to secure a discharge in bankruptcy. Nor must a debtor provide an infinitely detailed explanation of where his money and property have gone. But the debtor must keep and preserve records containing enough information to paint a reasonably clear picture of his finances during the period leading up to the filing of his bankruptcy petition. He also must offer some satisfactory explanation for apparent losses and deficiencies. In this case, the debtor has not been able to cross this low threshold — and he has offered no legally objectively reasonable justification for his failure.

**Affirmed.**