# United States Court of Appeals
## For the First Circuit

No. 22-9005

IN RE: RICHARD M. SHOVE, f/d/b/a Rick's Complete Lawn Care;
KATHLEEN E. SHOVE,

Debtors.

JOSE R. HERNANDEZ,

Appellee,

v.

RICHARD M. SHOVE,

Appellant,

KATHLEEN E. SHOVE,

Defendant.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Montecalvo, Selya, and Lynch,
<u>Circuit Judges</u>.

James P. Ehrhard for appellant.
Cynthia A. Spinola, with whom Hashim & Spinola was on brief,
for appellee.

October 6, 2023

**MONTECALVO, <u>Circuit Judge</u>.** In December 2017, the appellant, Richard M. Shove ("Shove"), filed a Chapter 7 bankruptcy petition. The appellee, Jose R. Hernandez, holds an unsatisfied judgment against Shove and sought to deny Shove a discharge on five grounds. The bankruptcy court denied the debtor a discharge pursuant to 11 U.S.C. § 727(a)(3) for the debtor's failure to keep or preserve records and 11 U.S.C. § 727(a)(4) for the debtor's making a false oath or account. The Bankruptcy Appellate Panel for the First Circuit (the "BAP") upheld the bankruptcy court's decision to deny a discharge pursuant to section 727(a)(3) and declined to reach whether a discharge also should be denied pursuant to section 727(a)(4). After careful consideration, we affirm the section 727(a)(3) denial and decline to decide whether a denial is warranted under section 727(a)(4).

## I. Background

Chapter 7 bankruptcy proceedings allow a debtor to obtain a "fresh start" by discharging nearly all previously incurred debts. <u>Privitera</u> v. <u>Curran</u> (<u>In re Curran</u>), 855 F.3d 19, 22 (1st Cir. 2017) (quoting <u>Grogan</u> v. <u>Garner</u>, 498 U.S. 279, 283 (1991)). Nevertheless, the bankruptcy code "limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor by exempting certain debts from discharge." <u>Grogan</u>, 498 U.S. at 279. One such exemption -- section 727(a)(3) -- is relevant here.

Under section 727(a)(3), a bankruptcy court may deny a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .

11 U.S.C. § 727(a)(3).

In this case, Shove, the debtor, operated a landscape company, Rick's Complete Lawn Care, for about twenty-five years. He also has experience in property management, owning approximately ninety rental units over the years. After sustaining an injury in a fall, Shove elected to close his landscaping business following the 2014-2015 season. Later that year, in December 2015, a house fire damaged Shove's home, forcing his family to move elsewhere for about a year.

According to the bankruptcy court, Shove testified that before the house fire in December 2015 he "kept paper copies of business records related to . . . the rental properties in boxes stored in the basement of [his home]" and that the fire and related water and ice damage destroyed those records. Shove and his wife Kathleen E. Shove ("Kathleen") did not keep records of rental payments after the December 2015 house fire. Instead, the Shoves "used a partial cash system." Shove testified that "a lot of

- 4 -

tenants paid cash" and that when tenants paid by check, Kathleen would often "cash some of those checks, at -- at the person's bank to make sure that they didn't bounce." Kathleen testified that the Shoves would keep cash from rental payments locked in the car, in a drawer in their kitchen, or in a hutch in their living room. The Shoves did not retain records of these rental payments, Kathleen's cashing of rental checks, or their cash payments for bills related to their rental properties.

In February 2015, before Shove's landscaping business wound down, Hernandez, Shove's then-employee, sustained a serious injury, falling from a snow-covered roof during the course of his employment. At the time of the accident, Shove did not have a workers' compensation policy in effect. Hernandez sued Shove for his injuries and, in September 2017, recorded a judgment against Shove in the amount of $965,201.53.[1]

Shortly after Hernandez obtained the judgment, in December 2017, Shove and Kathleen filed for Chapter 7 bankruptcy

---

[1] The jury in Hernandez's civil suit returned a verdict in his favor in the amount of $750,000 on June 14, 2017. On June 16, 2017, the trial court entered judgment for Hernandez, including interest and costs, in the amount of $937,097.83. Shove filed a notice of appeal on July 10, 2017, which was dismissed under Massachusetts Appellate Procedure Rule 10(c) on September 8, 2017, for Shove's failure to take the required steps to initiate his appeal. On September 20, 2017, Hernandez recorded the trial court's judgment, which had since accrued additional interest, against Shove in the Berkshire County Registry of Deeds. At that time the judgment included $750,000 in damages, $214,893.45 in interest, and $308.08 in costs of suit for a total of $965,201.53.

protection, requesting a discharge from, among other things, the $965,201.53 judgment. A Chapter 7 bankruptcy trustee ("the Trustee") was promptly appointed.

In due course, the Shoves filed their schedules of assets and liabilities and statement of financial affairs. As a part of their filings, the debtors disclosed that one or both of them owned nine total properties, several of which were income-producing as of 2017, all located in Berkshire County: their primary residence in Lenox (jointly owned), five multi-unit properties in Lenox (jointly owned), two multi-unit properties in Pittsfield (owned solely by Shove), and a single-family home in Lee (jointly owned). In addition, the Shoves indicated that they received monthly net rental income of $1,056.59, but they did not heed the form's instructions to attach a statement for each rental property showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.

The Trustee requested that the debtors provide additional documentation relating to their overall financial affairs and, in particular, the Shoves' use of cash in their real estate affairs. For example, the Trustee requested rent rolls, bank statements, and whatever financial documents the Shoves had so that he could attempt to ascertain the Shoves' financial position.

- 6 -

In March 2018, in response to the Trustee's request, the Shoves produced a single-page document for each month from January 2017 to March 2018 listing rent received from each property. Each document included a statement that the information represented their "best recollection" as of March 2018 because the Shoves "no longer ke[pt] records."

Also in March 2018, Hernandez commenced an adversary proceeding in the bankruptcy court to prevent discharge of the $965,201.53 judgment on five grounds. As is relevant to this appeal, he claimed that Shove's discharge should be denied under section 727(a)(3) because Shove, in the operation of his rental property and landscaping businesses, "failed to keep or preserve any recorded information, including books, documents, records, and papers, from which [his] financial condition or business transactions might be ascertained."

The debtors moved to dismiss Hernandez's amended complaint for failure to state a claim. Hernandez agreed to dismiss the claims against Kathleen but opposed the motion to dismiss as to Shove. After a hearing, the bankruptcy court allowed most of the claims, including the section 727(a)(3) claim, to proceed against Shove.

The case continued to trial. The Shoves' failure to keep records relating to the rental properties after the house fire proved fatal. The bankruptcy court denied Shove a discharge

pursuant to section 727(a)(3), concluding that "[a]lthough the lack of records for the period preceding December 2015 has been adequately explained, Shove has not justified the wholesale failure to keep records regarding his financial affairs for the post-[house-f]ire period." It also found that discharge should be denied under section 727(a)(4). When the debtors appealed, the BAP upheld the denial pursuant to section 727(a)(3) without deciding whether section 727(a)(4) also provided grounds for denial. This timely second-tier appeal ensued.

## II. Standard of Review

The bankruptcy code channels bankruptcy appeals through a two-tiered framework. City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 87 (1st Cir. 2011). Under this framework, a litigant who loses in the bankruptcy court may first appeal to either the district court or the BAP. See 28 U.S.C. § 158(a)-(b); In re Curran, 855 F.3d at 24. A party may then obtain a second level of appellate review from the court of appeals. See 28 U.S.C. § 158(d)(1). "We afford no particular deference to decisions of the first-tier appellate tribunal (be it the district court or the BAP) and focus instead on the bankruptcy court's decision." In re Curran, 855 F.3d at 24. We review that court's "findings of fact for clear error and its conclusions of law de novo." Wheeling & Lake Erie Ry. Co. v.

- 8 -

Keach (In re Montreal, Me. & Atl. Ry., Ltd. I), 799 F.3d 1, 5 (1st Cir. 2015).

### III. Discussion

Shove argues that the bankruptcy court erred in denying his motion to dismiss which, among other things, sought to dismiss Hernandez's claim that discharge should be denied pursuant to section 727(a)(3). He further argues that, even assuming the bankruptcy court's decision on the motion to dismiss was correct, the bankruptcy court erred in denying Shove a discharge pursuant to section 727(a)(3). We address each argument in turn.[2]

### A. Motion to Dismiss

We review the bankruptcy court's decision denying the motion to dismiss as to the section 727(a)(3) claim de novo. See Keach v. Wheeling & Lake Erie Ry. Co. (In re Montreal, Me. & Atl. Ry., Ltd. II), 888 F.3d 1, 6 (1st Cir. 2018). "The legal standards traditionally applicable to . . . motions to dismiss apply without change in bankruptcy proceedings." Rok Builders, LLC v. 2010-1

---

[2] Shove raises several other arguments related to the section 727(a)(4) claim. Because we conclude that his challenges to the section 727(a)(3) claim fail, we need not reach his challenges to the bankruptcy court's ruling on the section 727(a)(4) claim and its associated evidentiary rulings. See Zizza v. Harrington (In re Zizza), 875 F.3d 728, 733 (1st Cir. 2017) (affirming denial of discharge under section 727(a)(4)(A) and declining to address alternative ground for denial under section 727(a)(2)); Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 250 (4th Cir. 1994) ("Proof of conduct satisfying any one of [section 727(a)'s] sub-sections is enough to justify a denial of a debtor's request for a discharge.").

SFG Venture LLC (In re Moultonborough Hotel Grp., LLC), 726 F.3d 1, 4 (1st Cir. 2013). Accordingly, we accept all well-pleaded facts in the amended complaint as true "and draw[] all reasonable inferences in the pleader's favor." In re Curran, 855 F.3d at 25. "[A] complaint need not set forth 'detailed factual allegations,' but it must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" Id. (first quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); and then quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Dismissal is warranted when a complaint's factual averments are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" In re Montreal, Me. & Atl. Ry., Ltd. II, 888 F.3d at 6 (citation omitted).

Against this backdrop, we turn to the plausibility of Hernandez's section 727(a)(3) claim. The bankruptcy court declined to dismiss the section 727(a)(3) claim against Shove. The court's reasons for deciding so are unclear, as Shove did not meet his obligation to provide a transcript of the hearing. "We have held repeatedly that we will not review a claim of error if the appellant has failed to include a transcript of the pertinent proceedings in the record on appeal." Valedon Martinez v. Hosp. Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1135 (1st Cir. 1986). This failure to include the transcript is a sufficient basis to reject Shove's argument that this decision was erroneous.

- 10 -

Even if we were to reach that issue, as we may choose to do, see, e.g., id., we would still reject this argument for the reasons stated below.

To prevail "[u]nder § 727(a)(3), a creditor" must prove that the debtor (1) "unreasonably failed to maintain sufficient records" and (2) that this failure makes it impossible "to adequately ascertain [their] financial situation." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 70 (1st Cir. 2004). Thus, "[a] motion to dismiss a section 727(a)(3) claim is properly denied where the complaint specifically alleges that (a) the debtor failed to maintain any accounting or financial records and (b) . . . the failure made it impossible to determine the debtor's financial condition." Rasmussen v. LaMantia (In re LaMantia), No. 18-10632, 2019 WL 5388056, at *8 (Bankr. D. Me. Oct. 18, 2019).

In the amended complaint, Hernandez alleges that the Shoves, "in their operation and management of their various income producing properties in Berkshire County have . . . failed to keep or preserve any recorded information, including books, documents, records, and papers, from which [their] financial condition or business transactions might be ascertained." Parts of this allegation mirror the statutory language and further specify that the type of information not kept or preserved was financial information regarding the Shoves' "income producing properties in Berkshire County."

- 11 -

What is more, Hernandez's other allegations add further context for the specific records that he contends were not kept or preserved. For example, he also alleges that despite requests, the Shoves "[n]ever produced any financial, rental or business records in either electronic or hard copy form" and that "[b]oth one year prior to and subsequent to the filing of [the Shoves'] [p]etition in [b]ankruptcy, the [d]ebtors have concealed numerous rent receipts and other earned income paid to them in cash and checks[ and] have failed to record [the] same." Considering these allegations in conjunction with Hernandez's allegation that the Shoves "owned and operated at least nine multi-unit residential income-producing properties in Berkshire County," one could reasonably infer that Hernandez was unable to ascertain the whereabouts of a significant amount of rental income and therefore could not discern Shove's financial condition. Cf. Bank of Am. v. Seligman (In re Seligman), 478 B.R. 497, 504 (Bankr. N.D. Ga. 2012) (drawing similar inference in denying motion to dismiss section 727(a)(3) claim predicated on debtor's lack of documentation regarding "undeposited wages and cash withdrawals"); Aspire Fed. Credit Union v. Robinson (In re Robinson), 595 B.R. 148, 158-59 (Bankr. S.D.N.Y. 2019) (inferring that scant records which "fail[ed] to identify the sources and uses of hundreds of thousands of dollars of funds that flowed through and among . . . accounts"

made "it impossible to determine the [d]ebtor's true financial condition").

Thus, Hernandez's allegations in the amended complaint and the reasonable inferences therefrom state a plausible claim that discharge should be denied under section 727(a)(3), and we affirm this aspect of the bankruptcy court's ruling on the motion to dismiss.

## B. Denial of Discharge Pursuant to Section 727(a)(3)

Having determined that Hernandez stated a plausible section 727(a)(3) claim, we turn next to Shove's challenges to the merits of the section 727(a)(3) ruling. On appeal, Shove contends that the bankruptcy court erred in finding that (1) he failed to keep adequate rental records and (2) his failure to keep records was not justified. The bankruptcy court concluded that Hernandez had met his burden to show that Shove had failed to maintain adequate records. Shove does not seriously dispute that he failed to keep and maintain contemporaneous records of rental payments. Rather, he argues that the post-hoc rent rolls he created for the Trustee fulfilled his duty to keep records and that his practice of not keeping records was justified under the circumstances.

"[T]he ultimate decision about whether to grant or withhold a discharge is a mixed question of law and fact." Gannett v. Carp (In re Carp), 340 F.3d 15, 25 (1st Cir. 2003). Shove's arguments, however, primarily take aim at the bankruptcy court's

- 13 -

factual findings. "Accordingly, we 'review only for clear error, with due regard . . . to the opportunity of the bankruptcy court to judge the credibility of witnesses.'" Id. (citation and some internal quotation marks omitted). In reviewing for clear error, we will not set aside the bankruptcy court's "findings of fact and the conclusions drawn therefrom . . . 'unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made.'" Id. at 22 (citation omitted). Thus, "if the bankruptcy court's findings are supportable on any reasonable view of the record, we are bound to uphold them." Id.

Before we dive further into Shove's challenges to the merits of the section 727(a)(3) ruling, some additional background on section 727(a)(3) and the legal principles employed to assess section 727(a)(3) claims is useful. "Every debtor has a duty to maintain books and records accurately memorializing [their] business affairs." Harrington v. Simmons (In re Simmons), 810 F.3d 852, 857 (1st Cir. 2016). "Congress's evident purpose in enacting section 727(a)(3) was to give interested parties [such as creditors] and the court a reasonably complete picture of the debtor's financial condition during the period prior to bankruptcy" to facilitate "intelligent inquiry" into the debtor's financial condition. Id. at 857-58 (citations omitted). "Section 727(a)(3) operates in furtherance of [the debtor's record-keeping] duty" by empowering a bankruptcy court to "deny a discharge to a

- 14 -

debtor who has failed to 'keep or preserve' adequate business records 'from which the debtor's financial condition or business transactions might be ascertained.'" Id. at 857 (quoting 11 U.S.C. § 727(a)(3)).

Claims that a discharge should be denied pursuant to section 727(a)(3) proceed through two steps. At the first step, the party invoking section 727(a)(3) carries the burden to demonstrate "that the debtor has failed to maintain adequate records." Id. If the claimant makes this prima facie showing, the burden then shifts to the debtor to establish that the "debtor's failure to keep and preserve records [was] justified." Id. at 858; see In re Schifano, 378 F.3d at 70.

Although a debtor's "[r]ecord-keeping need not be precise to the point of pedantry," the records must "sufficiently identify the transactions [so] that intelligent inquiry can be made of them." In re Simmons, 810 F.3d at 857-58 (citation omitted) (second alteration in original). Shove's efforts here fall woefully short of this requirement. At trial, Shove conceded that he did not keep contemporaneous records relating to his several income-producing properties. And because Shove's rental business dealt primarily in cash transactions that were not always deposited into a bank account, Shove's failure to keep contemporaneous records made it all the more difficult for the

Trustee or creditors to have any degree of confidence that they understood Shove's financial affairs.

Shove's post-hoc rent rolls that he created for the Trustee do not move the needle. As the rent rolls themselves note, they reflect Shove's and Kathleen's "best recollection" as to rent received rather than actual rents received "as [they] no longer keep records." What is more, even though the Shoves claim that "money received from . . . paying tenants goes to maintenance, upkeep[,] and utility bills for all properties" and provided at least some copies of bills and properties expenses, the information provided still was insufficient for the bankruptcy court and the Trustee to reconcile the difference between estimated rent received and bank deposits.

At the end of the day, the Trustee testified that he was "having great difficulty determining the status of [the Shoves'] financial affairs" and that he never fully "satisf[ied] [himself] that [he] had a complete handle on the status of their financial affairs from the records" provided. Accordingly, given the Trustee's testimony and the lack of contemporaneous records, we would be hard pressed to find that the court erred in finding that Shove failed to keep adequate records after the house fire.

Shove next argues that, notwithstanding any failure to keep records, his record practices were reasonable under the circumstances because, according to him, "such records are

customarily not used with few rental units," and his family was going through extenuating circumstances after being displaced by the fire. In other words, he contends that his failure to keep contemporaneous records was justified.

The justification defense is one of objective reasonableness. In re Simmons, 810 F.3d at 858. In assessing whether a failure to keep adequate records is justified, we ask what "a reasonably prudent person" would do in like circumstances. Id.; see Meridian Bank v. Alten, 958 F.2d 1226, 1231-32 (3d Cir. 1992). Many factors may be pertinent to this inquiry. In re Simmons, 810 F.3d at 858. For example, we may consider "the debtor's education, experience, and sophistication; the volume and complexity of the debtor's business; and whatever other circumstances are made relevant by the idiosyncrasies of the case." Id. (collecting cases).

In this case, the bankruptcy court determined that the relevant factors counseled against a finding that Shove acted as a "reasonably prudent" rental property owner and manager. Id. Specifically, it reasoned that in light of Shove's "lengthy history as a business and rental property owner," the change in record-keeping practice pre- and post-fire, the relatively light burden involved in recording rent-related transactions, and Shove's demeanor at trial, Shove's failure to keep records was unreasonable and unjustified.

We see no error in the bankruptcy court's well-reasoned assessment. At the time Shove filed for bankruptcy he owned and managed several income-producing properties. A reasonable individual who owned several income-producing properties would keep and preserve records related to those properties, and the bankruptcy court was within its province in concluding that Shove's failure to do so was unreasonable and unjustified. As the bankruptcy court found, Shove previously operated a landscaping company for twenty-five years, owned ninety rental units over his career, and kept rental income and expense records in the past. Shove thus possessed the necessary expertise to contemporaneously record rental income and expenses.[3]

Shove's argument that the bankruptcy court improperly assessed his credibility and demeanor does not persuade us otherwise. As an initial matter, "we are not free to . . . make independent judgments about the credibility of witnesses." In re Carp, 340 F.3d at 19. Instead, we must give "due regard . . . to the opportunity of the bankruptcy court to judge" a witness's

---

[3] We need not address Shove's argument that the financial and emotional challenges his family faced after the fire and in connection with defending against Hernandez's lawsuit justify his lack of record keeping because Shove did not raise and develop this argument before the bankruptcy court. As such, any argument on this score is waived. See Banco Bilbao Vizcaya Argentaria v. Net-Velázquez (In re Net-Velázquez), 625 F.3d 34, 39-40, 40 n.8 (1st Cir. 2010) ("[A]rguments must be presented in the bankruptcy court to be preserved.").

credibility.  Id. at 25 (citation omitted).  Shove's contention that the bankruptcy court erroneously assigned Kathleen's traits to Shove lacks merit.  To be sure, the bankruptcy court took issue with Kathleen's demeanor and found her incredible at times.  But it also found that, at times, Shove was "condescending," "evasive," and "visibly frustrated" during questioning at trial.  The mere fact that the bankruptcy court found that both Shove and Kathleen exhibited these traits does not render its credibility determination erroneous, particularly where Shove offers nothing to suggest he behaved in a different manner.

Accordingly, we see no reason to disturb the bankruptcy court's finding that Shove, without any objectively reasonable justification, failed to keep adequate records regarding his rental properties.  Shove argues that such an outcome punishes a debtor for operating on a cash basis.  But his argument is misguided.  It is not the cash basis of his rental business that dooms his ability to obtain a discharge. Rather, it is his failure to adequately record and account for the flow of that cash in a way that makes it possible for someone to ascertain his financial status that does so.  We thus affirm the section 727(a)(3) denial of discharge.

## IV. Conclusion

For the reasons stated above, we **<u>affirm</u>** the denial of discharge under section 727(a)(3).